**Zavtcho STOYANOV, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 97–71157.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1999.

Decided April 21, 1999.

Michael A. Mullery, McVey and Mullery, San Francisco, California, for the petitioner.

Thankful T. Vanderstar, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: FLETCHER and TASHIMA, Circuit Judges, and FITZGERALD, District Judge.*

FLETCHER, Circuit Judge:

Zavtcho Stoyanov, a citizen and national of Bulgaria, petitions for review of a decision by the Board of Immigration Appeals (BIA) vacating a grant of asylum by an Immigration Judge (IJ) and ordering deportation. In vacating the IJ's grant of asylum, the BIA rejected the IJ's finding that Stoyanov was credible. We grant Stoyanov's petition for review, vacate the BIA's decision, and remand for further proceedings.

I.

Stoyanov entered the United States on a six-month visitor's visa on July 29, 1992. He applied for asylum on September 14, 1992. The Immigration and Naturalization Service (INS) denied his application in May 1993 and issued an Order to Show Cause why he should not be deported on June 1, 1993. Stoyanov then applied for asylum a second time on March 25, 1994, three months before his scheduled hearing before an IJ.

In his two applications for asylum and in testimony before the IJ, Stoyanov stated that in March, 1992, he attended a political rally of Turkish and other minorities in Sofia, where he lived. Two radio reporters at the rally asked if they could interview him, and he agreed. The reporters asked his name, why he was there, and how he viewed the situation of minority groups in Bulgaria at the time. In his second application for asylum,[1] Stoyanov stated that he answered the interviewers as follows:

I tried to explain to the interviewers that I felt all Bulgarians needed to cooperate during this time of change, and to work together to bring about changes slowly in the country.... I felt that minority people had been particularly deprived of certain things, such as using their own language or their own names, and that now they wanted these things right away, which would be very difficult to achieve.... I [stated that I] believe[d] that we ha[d] to make changes slowly....

Stoyanov's interview was subsequently broadcast on the radio.

A short time after the rally, Stoyanov and his wife started receiving threatening telephone calls at their home. In his 1994 asylum application Stoyanov described these calls as coming "from angry people demanding to know what I was doing, saying, thinking and meaning to give such an interview.... All of these callers told me that I talked too much, had a big mouth and was not going to live too long because people like me didn't deserve a place on the Earth." Stoyanov received about twenty-five of these calls over a two month period, at all times of the day and night. Stoyanov testified that he was sure they were in reaction to the radio interview he gave at the rally.

---

* The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

1. Stoyanov submitted two applications for asylum, one in 1992, months after arriving in the United States, and one in 1994, after he had been put in deportation proceedings.

During the same period that he received the telephone calls, Stoyanov was attacked three times in the street by different people he did not know. In the first attack, a man accosted Stoyanov one evening as he was leaving a coffee shop in central Sofia. The man beat Stoyanov while saying things like "you know who you are" and "you know what you did." Although Stoyanov was wearing expensive jewelry at the time, his attacker did not rob him. The second time, two men accosted Stoyanov in the street and beat him. The men repeated the kinds of things the first attacker had said, and then left without robbing him. Stoyanov testified before the IJ that he lost a tooth as a result of this attack. The third time, one man attacked Stoyanov. In his 1994 application and in his testimony before the IJ, Stoyanov stated that the attacker tried unsuccessfully to stab Stoyanov with a knife. The attacker repeated the things that Stoyanov's earlier attackers had said to him, and then left without attempting to rob him. Stoyanov testified he was quite certain that the attacks, like the threatening telephone calls, were the work of extremists within the Turkish community who objected to the views he expressed during the radio interview.

After listening to Stoyanov's testimony in a hearing that spanned two days, the IJ found him to be credible:

> The Court observed the respondent while he was testifying and noticed that he very quickly answered all of the questions put forward even under exhaustive questioning by the Court, he [answered questions] very quickly and very straightforwardly .... and the Court would find [he] has been straightforward and candid as to his particular claim.

The IJ also credited Stoyanov for not claiming that he feared persecution at the hands of the government as well as the Turkish minority in Bulgaria: "[H]e was being very candid and honest by saying no, that's not the reason, the reason is ... the Turkish minority who were, he feels, behind these beatings." Largely on the basis of Stoyanov's credible testimony, the IJ granted his request for asylum.

The INS appealed to the BIA, and the BIA vacated the IJ's decision. Although the INS had not contested the IJ's credibility finding, the BIA raised the issue sua sponte and reversed the IJ's finding. In so doing, the BIA listed four inconsistencies or inadequacies that it perceived in Stoyanov's application:

1. In his first asylum application submitted in 1992, Stoyanov stated that he had been stabbed in the third attack. In his 1994 application and testimony, he stated that he had been threatened with a knife but not stabbed.

2. In his 1992 application, Stoyanov stated that members of both the Turkish and gypsy minority groups had persecuted him. In his later application and testimony he stated that the gypsies were not involved.

3. In his testimony before the IJ, Stoyanov stated that his tooth was broken during his second beating, but later in his testimony he stated that it happened during his third beating. In his 1992 and 1994 applications he made no mention of a tooth being broken.

4. Stoyanov failed to produce any documentary or other objective evidence to corroborate his allegations.

After finding Stoyanov not credible, the BIA disposed of the merits of the case in one sentence: "Finally, even if the respondent's testimony at the hearing were fully credited, and we make no such affirmative finding, we are not persuaded that his claimed experiences in Bulgaria rise to the level of persecution or that he would encounter any difficulties upon his return to Bulgaria, years after the radio interview was reportedly broadcast." Stoyanov timely petitioned this court for review of the BIA's decision.

## II.

The BIA raised the issue of Stoyanov's credibility sua sponte. The INS did not raise the issue in its brief appealing from the decision of the IJ. Thus, Stoyanov had no notice of, or opportunity to be heard on, the credibility issue before the BIA issued its decision. We must decide whether this was a violation of Stoyanov's right to due process.[2]

Our recent decision in *Campos–Sanchez v. INS*, 164 F.3d 448 (9th Cir. 1999), provides the relevant rule. In that case, after an IJ found Campos–Sanchez credible but denied his application for asylum on the merits, "the BIA independently reviewed the record and made an adverse credibility finding, which formed the sole basis for its denial of Campos–Sanchez's appeal." *Id.* at 450. Campos–Sanchez had not been notified that his credibility was at issue, nor had he been given the opportunity to offer evidence on that issue before the BIA made its finding. We held that this violated due process. Specifically, we held that "the BIA must provide a petitioner with a reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum." *Id. See Castillo–Villagra v. INS*, 972 F.2d 1017 (9th Cir.1992) (holding that the BIA may not take administrative notice of changed country conditions without giving petitioner adequate warning and an opportunity to be heard).

Here, the BIA made an adverse credibility finding without affording Stoyanov any opportunity to explain the supposed inconsistencies in his written and oral testimony. Under *Campos–Sanchez*, if the adverse credibility finding "form[ed] the basis of [the BIA's] denial of asylum," 164 F.3d at 450, then we must vacate the denial and remand to allow Stoyanov a reasonable opportunity to explain those in-consistencies. If, however, the BIA established an adequate alternative basis for its holding separate from its adverse credibility finding, then we may affirm its decision on that alternative basis.

## III.

We review the BIA's factual findings under the "substantial evidence" standard. *See Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998). "In order for this court to conduct a proper substantial evidence review of the BIA's decision, the Board's opinion must state with sufficient particularity and clarity the reasons for denial of asylum." *Castillo v. INS*, 951 F.2d 1117, 1121 (9th Cir.1991); *see Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir.1995) (BIA's decision must be "adequate for us to conduct our review"). Thus, "[t]he BIA's opinion ... cannot be mere 'boiler-plate'." *Shirazi–Parsa v. INS*, 14 F.3d 1424, 1427 (9th Cir.1994) (quoting *Castillo*, 951 F.2d at 1121). By the same token, we cannot affirm the BIA's decision on an alternative basis if the BIA describes that basis in mere boilerplate language.

We find that the BIA did not adequately develop any alternative basis for its decision in this case. Although the BIA stated it had "reservations both with respect to the respondent's credibility and with regard to the sufficiency of the evidence," its opinion focused almost exclusively on credibility. Indeed, the BIA's treatment of the merits of Stoyanov's claim was contained in one sentence: "Finally, even if the respondent's testimony at the hearing were fully credited, and we make no such affirmative finding, we are not persuaded that his claimed experiences in Bulgaria rise to the level of persecution or that he would encounter any difficulties upon his return to Bulgaria, years after the radio interview was reportedly broadcast."[3] This conclusory statement is not a

---

**2.** As a general matter, the Fifth Amendment requires that deportation proceedings provide due process of law. *See Campos–Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999) (citing

*Ramirez v. INS*, 550 F.2d 560, 563 (9th Cir. 1977)).

**3.** Earlier in its opinion, the BIA did discuss the lack of "objective background evidence"

sufficient analysis of the merits of Stoyanov's claim. *See Hartooni v. INS,* 21 F.3d 336, 343 (9th Cir.1994) ("We are not permitted to credit ... conclusory, ... boilerplate decision[s]."). Rather, in order to establish an alternative holding on the merits, the BIA must provide a reasoned analysis of the legal basis for its holding, specifying as well the particular facts on which that holding relies. *See Garrovillas,* 156 F.3d at 1013; *Shirazi–Parsa,* 14 F.3d at 1427; *Castillo,* 951 F.2d at 1121. Since the BIA did not adequately analyze the merits of Stoyanov's claim, we cannot affirm its decision on that ground.

## IV.

We grant Stoyanov's petition for review, vacate the BIA's denial of asylum, and remand for Stoyanov to be provided a reasonable opportunity to explain the inconsistencies the BIA perceives in his application. If further factual development of the record is required, the BIA may need to remand the case to the IJ. In any case, we note that if the BIA continues to find Stoyanov not credible, it must provide a "legitimate articulable basis" for its finding, and "must offer a specific, cogent reason for any stated disbelief." *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir.1996); *see Garrovillas,* 156 F.3d at 1013; *Hartooni,* 21 F.3d at 342. "Minor inconsistencies" cannot support an adverse credibility finding. *Vilorio–Lopez v. INS,* 852 F.2d 1137, 1142 (9th Cir.1988). Indeed, "trivial errors by an asylum applicant do not constitute a valid ground upon which to base a finding that an asylum applicant is not credible." *Osorio,* 99 F.3d at 931 (internal quotation marks omitted). We note in particular that where a petitioner initially gives one account of persecution but then revises his story so as to "lessen the degree of persecution he experienced, rather

to support Stoyanov's claim. While this might seem to be a comment on the merits of the claim, the final two sentences of that paragraph show that it was actually part of the BIA's analysis of credibility: "Indeed, the only background material that was provided,

than to increase it," the discrepancy generally does not support an adverse credibility finding. *Garrovillas,* 156 F.3d at 1014.

The petition for review is GRANTED, the BIA's decision is vacated, and the case is REMANDED to the BIA for further proceedings consistent with this opinion. This panel retains jurisdiction over any subsequent appeal to this court in this case.

a brief State Department advisory opinion, discusses the problems Turks have had in Bulgaria. Given this information, we find the respondent's account *implausible.*" (Emphasis added).