**Gilberto SEBASTIAN–SEBASTIAN, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 97–71045.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 11, 1998.[1]

Filed Oct. 25, 1999.

Christopher J. Stender, Stender & Larkin, Phoenix, Arizona, for the petitioner.

Regina Byrd, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

---

1. The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Before: PREGERSON, WIGGINS, and BRUNETTI, Circuit Judges.

Opinion by Judge WIGGINS;
Concurrence by Judge WIGGINS; Special Concurrence by Judge BRUNETTI;
Dissent by Judge PREGERSON.

WIGGINS, Circuit Judge:

We concur in the judgment of the Court affirming the decision of the Board of Immigration Appeals to deny Gilberto Sebastian–Sebastian's application for asylum and withholding of deportation.[2]

WIGGINS, Circuit Judge, concurring:

Gilberto Sebastian–Sebastian ("Sebastian"), a Guatemalan native, fled deplorable conditions in his country that have resulted from conflicts between guerrilla forces and the Guatemalan military. He petitions this court for review of the decision of the Board of Immigration Appeals (the "Board") affirming the denial by the Immigration Judge of his application for asylum and withholding of deportation. I vote to deny Sebastian's petition. Although I am sympathetic to Sebastian's plight, I believe that the Court is required to defer to the controlling findings of the administrative authorities.

I

Sebastian, a twenty-three year-old Guatemalan native and citizen, was born in San Sebastian Coatan, Guatemala. He entered the United States without inspection on September 9, 1994, and resided in this country for nearly one year without detection. On August 1, 1995, the Immigration and Naturalization Service issued an Order to Show Cause that charged, inter alia, that Sebastian was deportable pursuant to Section 241(a)(1)(b) of the Immigration and Nationality Act (the "Act"), for having entered the United States without Inspection.

On February 13, 1996, Sebastian appeared before an Immigration Judge and, through his counsel, admitted the allegation contained in the OSC and conceded deportability. He requested relief from deportability by means of asylum and withholding of deportation. During the merits hearing, his attorney made clear that Sebastian's asylum application was based on a political opinion imputed to him by Guatemalan guerrillas, even though his asylum application had indicated that he had been persecuted on account of a neutral political opinion.

Sebastian supported his asylum application with his own testimony, an affidavit that he executed, and two letters that indicated that he left Guatemala in search of a better life and future. In relevant part, he testified that his youngest brother was forced into military service by the Guatemalan army. He also testified that guerrillas molested and killed one of his sisters. According to Sebastian's testimony, these guerrillas would come to his home town every Sunday and would go to each of the homes seeking food, clothing, or money. If the townspeople refused to supply the guerrillas, they would be beaten or killed. Sebastian testified that he had witnessed these incidents. In particular, the guerrillas killed Sebastian's grandfather as Sebastian watched because his grandfather did not have money or food to give to them.

During one of these visits to Sebastian's hometown, the guerrillas noticed that Se-

<hr>

2. This Court has jurisdiction under 8 U.S.C. § 1105a. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") repealed 8 U.S.C. § 1105a, replacing it with a new judicial review provision codified at 8 U.S.C. § 1252. See IIRIRA § 306(c)(1), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), as amended by Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656. Because Sebastian's deportation proceedings commenced before April 1, 1997, this Court continues to exercise jurisdiction pursuant to 8 U.S.C. § 1105a. See IIRIRA § 309(c)(1).

bastian was old enough to join them. Sebastian testified that his father refused the guerrillas' request for Sebastian to join them, and the guerrillas indicated that if Sebastian did not join them they would kill him. According to Sebastian, it was common for the guerrillas to take people from the town, especially healthy young men because the guerrillas wanted to increase their numbers.

Sebastian testified that after this threat was made, he would generally hide himself when the guerrillas came to town. On some occasions, however, the guerrillas saw him. Sebastian claimed that the guerrillas would accuse him of having the same mind set as his brother who was serving in the Guatemalan Army. He testified that they cursed him, threatened him, and hit him with their guns. Sebastian testified that he was beaten six times and that during his last beating the guerrillas threatened to kill him if he did not join them within three days. Sebastian left the next day and traveled to the United States.

The Immigration Judge denied Sebastian's application for asylum and withholding of deportation on June 19, 1996. After indicating that Sebastian's asylum application was supported only by his "own unsubstantiated and conclusitorial [sic] statements," the Immigration Judge rejected Sebastian's application because the guerrillas' persecution of him was solely an effort to coerce him into joining their ranks, rather than because of a political opinion that they imputed to him. The Immigration Judge did, however, grant Sebastian's request for voluntary departure.

By final order dated August 19, 1997, the Board dismissed Sebastian's appeal, agreeing with the Immigration Judge that Sebastian had not established that the guerrillas' persecution of him was on account of an imputed political opinion. The Board indicated that it did not believe Sebastian's testimony that the guerrillas would attempt to induct him into their ranks at the same time that they attrib-

uted a pro-military opinion to him because of his brother's military service. Sebastian now timely petitions this court for review of the Board's decision.

## II

### A. *Standard of Review*

■ The Court reviews the Board's decision that Sebastian has not established eligibility for asylum under the substantial evidence standard of review. *See Singh v. INS,* 134 F.3d 962, 966 (9th Cir.1998). "That standard is 'extremely deferential.'" *Singh–Kaur v. INS,* 183 F.3d 1147, 1149 (9th Cir.1999) (quoting *Ghaly v. INS,* 58 F.3d 1425, 1431 (9th Cir.1995)). Under this standard of review, "a petitioner contending that the Board's findings are erroneous must establish that the evidence *not only supports that conclusion, but compels it.*" *Ghaly v. INS,* 58 F.3d at 1431 (internal citations omitted) (emphasis added). "This strict standard bars a reviewing court from independently weighing the evidence and holding that petitioner is eligible for asylum, except in cases where compelling evidence is shown." *Kotasz v. INS,* 31 F.3d 847, 851 (9th Cir.1994). Therefore, the Court must deny Sebastian's petition unless he presented evidence "so compelling that no reasonable factfinder could find" that Sebastian has not established asylum eligibility. *See INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

Because the Board clearly incorporated the Immigration Judge's decision, the Court must review the Immigration Judge's findings. *See Alaelua v. INS,* 45 F.3d 1379, 1382 (9th Cir.1995). When the Board has incorporated the findings of the Immigration Judge, the Court must review the credibility findings of the Board and the Immigration Judge for substantial evidence. *See Singh–Kaur,* 183 F.3d at 1149.

### B. *Eligibility for Asylum*

Under Section 208(a) of the Immigration and Nationality Act (the "Act"), the Attor-

ney General has the discretion to grant asylum to aliens who qualify as statutory "refugees." *See* 8 U.S.C. § 1158(a). In order to be eligible for asylum, therefore, Sebastian must show that he is "unwilling or unable" to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Sebastian claims eligibility because of both past persecution and a well-founded fear of future persecution by Guatemalan guerrilla forces on account of an imputed political opinion.

An asylum seeker claiming to have been a victim of persecution on account of political opinion must establish four facts: (1) that he has been a victim of persecution; (2) that he holds a political opinion; (3) that his political opinion is known to or imputed by the persecutors; and (4) that his ensuing persecution has been or will be on account of this political opinion. *See Sangha*, 103 F.3d at 1487. "[A]n asylum seeker claiming a well-founded fear of persecution on account of political opinion must show the second, third and fourth elements, though not necessarily the first." *Gonzales–Neyra v. INS*, 122 F.3d 1293, 1296 (9th Cir.1997).

▆▆▆ Sebastian's petition does not make clear whether he actually holds a political opinion. Instead, Sebastian appears to claim that he has been persecuted on account of a political opinion attributed to him by Guatemalan guerrillas: support for the Guatemalan military.[3] Sebastian's lack of a political opinion, however, is not fatal to his asylum claim because this circuit's precedents have recognized that "an

applicant can establish a 'political opinion' under the Act" by means of "an imputed political opinion." *Sangha v. INS*, 103 F.3d 1482, 1489 (9th Cir.1997). "An imputed political opinion is a political opinion attributed to the applicant by his persecutors." *Id.; cf. Briones v. INS*, 175 F.3d 727, 729 (9th Cir.1999) (en banc) (recognizing that persecution on account of a protected status includes persecution where applicant's persecutors "attributed to him an adverse political point of view"). When the Court reviews a petition involving an imputed political opinion, it must determine whether "the persecutor attributed a political opinion to the victim, and acted upon the attribution" because, if answered in the affirmative, "this imputed view becomes the applicant's political opinion as required under the Act." *Sangha*, 103 F.3d at 1489.

Sebastian bears the burden of establishing his eligibility under the Act. 8 C.F.R. § 208.13(a); *Sangha*, 103 F.3d at 1487. He must establish his case by " 'credible, direct, and specific evidence' in the record." *Id.* (quoting *Prasad v. INS*, 47 F.3d 336, 338 (9th Cir.1995)). This burden imposes two distinct requirements upon a petitioner:

> A petitioner seeking … asylum must first present sufficient facts to establish a prima facie case that there is a … well-founded fear of persecution under the discretionary 1158(a) claim.[4] Secondly, he must persuade the immigration judge and the BIA that his evidence is credible.

*Saballo–Cortez v. I.N.S.*, 761 F.2d 1259, 1262 (9th Cir.1985).

---

**3.** The persecution that Sebastian alleges was at the hands of guerilla forces, not the government of Guatemala. "Nevertheless, persecution cognizable under the Act can emanate from sections of the population that do not accept the laws of the country at issue, sections that the government of that country is either unable or unwilling to control." *Borja v. INS*, 175 F.3d 732, 735 n. 1 (9th Cir.1999) (en banc).

**4.** The provisions of 8 U.S.C. § 1158(a) give the Attorney General discretionary authority to grant asylum to an alien "if the attorney general determines that such alien is a refugee within the meaning of Section 1101(a)(42)(A) of this title."

In this case, the Board determined that the guerrillas did not persecute Sebastian on account of a political opinion that they attributed to him. My inquiry, therefore, requires me to determine whether substantial evidence supports the Board's determination that Sebastian's testimony failed to provide the requisite causal link between the political opinion that he claims the guerrillas attributed to him and their persecution of him.

### III

In his petition, Sebastian does not claim a specific error by the Board. Rather, he claims that he has demonstrated past persecution on account of an imputed political opinion and that he has demonstrated a well-founded fear of persecution on account of an imputed political opinion. The Board rejected Sebastian's asylum claim and request for withholding of deportation, agreeing with the Immigration Judge that Sebastian had "not met his burden to establish that he was a victim of past persecution, has a well-founded fear of persecution on a ground protected under the Immigration and Nationality Act, or faces a clear probability of such persecution in Guatemala." Decision of the Board of Immigration Appeals, dated August 19, 1997, at 1. After reviewing the administrative record, I find that substantial evidence supports the Board's and the Immigration Judge's determinations that Sebastian has failed to meet his burden of establishing that any past persecution was on account of a political opinion or that any future persecution would be on account of a political opinion.

Sebastian claimed that he had suffered past persecution on account of an imputed political opinion because of his brother's service in the Guatemalan military.[5] He

---

**5.** In addition to testifying regarding his own mistreatment by the guerrillas, Sebastian testified that his family members were also gravely mistreated by the guerrillas. It is unclear from Sebastian's petition what his testimony about the mistreatment of his family sought to establish in terms of supporting his asylum application. The Board agreed with the Immigration Judge that his testimony never indicated that the guerrillas' mistreatment of his family, though deplorable, was related to a political opinion imputed to them by the guerrillas. Our review of the record finds substantial evidence to support the Board's determination. Sebastian testified that his sister was abducted, became pregnant, and later died after being hit by one of the guerrillas. Although these events are tragic, they do not bolster Sebastian's asylum claim because Sebastian never attributed these actions to a political opinion that the guerrillas imputed to his sister. Instead, these events appear to be part of the barbarities that the guerrillas inflicted on the women of his village. Substantial evidence therefore supports the Board's determination that the mistreatment of Sebastian's sister was not "on account of an imputed political opinion" or "distinguishable from the generalized violence that befell women in his village." Decision of the Board of Immigration Appeals, dated August 19, 1997, at 1. Although I am sympathetic to Sebastian's loss, the Board was correct in finding that these acts of general lawlessness and violence do not support an asylum claim. *See Singh,* 134 F.3d at 967 ("Mere generalized lawlessness and violence between diverse populations, of the sort which abounds in numerous countries and inflicts misery upon millions of innocent people daily around the world, generally is not sufficient to permit the Attorney General to grant asylum to everyone who wishes to improve his or her life by moving to the United States without an immigration visa."). Sebastian also testified that he witnessed the guerrillas beat his grandfather to death. This testimony regarding his grandfather, however, indicated that the guerrillas killed his grandfather because he was too old to continue to support them with money and food, rather than because of a political opinion attributed to him by the guerrillas. Sebastian testified that it was common for the guerrillas to beat or kill anyone who failed to provide food and money upon request. His testimony, therefore, failed to establish the requisite causal link between the guerrillas' persecution of his grandfather and his grandfather's political opinion, whether actual or imputed, because Sebastian's testimony never indicated that the guerrillas' persecution of his grandfather was anything but persecution "on account of" his grandfather's apolitical refusal to continue to support the guerrillas. *See Sangha,* 103 F.3d at 1490–91. I therefore find that substantial evidence supported the Board's conclusion that Sebastian never "demonstrate[d] that the guerrillas killed his grandfather on account of a protected ground

testified that his brother was forcibly drafted into the Guatemalan military. He also testified that the guerrillas would threaten and beat him because they thought that he had the same mind set as his brother. If believed, this testimony would establish a political opinion imputed to him by the guerrillas because we have held that an asylum applicant establishes an imputed political opinion when "one party to a conflict [ ] insist[s] to the victim that the victim is aligned with the other side." *Sangha,* 103 F.3d at 1489. Sebastian would have, therefore, established that the guerrillas' persecution of him was on account of a protected ground if he had established that the guerrillas persecuted him because they believed that he was aligned with the Guatemalan military due to his brother's forced service in the military. If this portion of his testimony was believed, his testimony would have shown that the guerrillas' persecution was on account of an imputed political opinion, even if the persecution was also motivated by efforts to increase the guerrillas' ranks. *See Borja,* 175 F.3d at 736 ("An applicant for asylum need not show conclusively why persecution occurred in the past or is likely to occur in the future. However, the applicant must produce evidence from which it is reasonable to believe that the harm was motivated, *at least in part,* by

an actual or implied protected ground.") (quoting *In re T–M–B–,* Interim Dec. No. 3307 (BIA Feb. 20, 1997) (emphasis added)).

The mere existence of some testimony that would, if believed, establish asylum eligibility, does not end our inquiry because Sebastian's testimony also indicated a non-political motive for guerrillas' persecution of him: an effort to coerce him into joining their ranks.[6] After the Supreme Court's decision in *Elias–Zacarias,* "an applicant's refusal to fight in the context of a forced recruitment is not enough by itself to show that the persecutor acted 'on account of' his political views." *Sangha,* 103 F.3d at 1490 (quoting *Elias–Zacarias,* 502 U.S. at 482–83, 112 S.Ct. 812). "[T]o qualify under the Act, the applicant must bring other evidence to show that the persecution was based on political opinion." *Id.* In this case, if Sebastian's testimony regarding the guerrillas' attribution of a political view to him because of his brother's service in the Guatemalan military was believed, that testimony would have provided the additional evidence necessary to establish Sebastian's asylum eligibility. The Board's and the Immigration Judge's rejection of those portions of Sebastian's testimony, however, are fatal to Sebastian's asylum claim.[7]

---

rather than for his refusal to provide food and money." Decision of the Board of Immigration Appeals, dated August 19, 1997, at 1–2.

**6.** Because the Immigration Judge made no explicit findings that Sebastian's testimony was credible, our case is decidedly different than that in *Tarubac v. INS,* 182 F.3d 1114 (9th Cir.1999). In *Tarubac,* we indicated that "the presence of a nonpolitical motive for persecution does not, without more, prove the absence of a political motive" in those cases in which the Immigration Judge finds the applicant's testimony to be "sincere and genuine" and gives "full weight as evidence" to the alien's testimony. *Tarubac,* 182 F.3d at 1119, 1117. The applicant always "bears the burden of establishing his eligibility under the Act." *Sangha,* 103 F.3d at 1487. Where the asylum seeker testifies that he was persecuted on account of a political opinion *and* the Immigration Judge makes an express finding

that testimony was credible, the petitioner has met his burden of establishing asylum eligibility even if there was also evidence of a nonpolitical motive for the persecution. But where the Immigration Judge has made no such blanket credibility finding, we cannot say that the petitioner has met his burden of persuasion unless the evidence compels a finding of asylum eligibility. Where the Immigration Judge finds, explicitly or implicitly, that the persecution was because of a nonpolitical motive, such a showing is extremely unlikely. In our case, the Immigration Judge did not make such a blanket finding about Sebastian's credibility, so my analysis is not as easy as the rare case exemplified by *Tarubac.*

**7.** Our precedents have suggested that where the administrative authorities are silent regarding an applicant's credibility, we will "presum[e] that [they] found the petitioner credible." *Maldonado–Cruz v. INS,* 883 F.2d

The Board did not believe those portions of Sebastian's testimony that indicated that the guerrillas' persecution of him was because of his brother's service in the Guatemalan military. The Board relied primarily upon the Immigration Judge's determination that the persecution was solely an effort to coerce Sebastian into joining their ranks, rather than because of a political opinion that they attributed to him due to his brother's military service. The Board made explicit what the Immigration Judge implicitly relied upon in rejecting the crucial aspects of Sebastian's testimony: a perceived inconsistency between the guerrillas' desire to recruit Sebastian into their ranks, while viewing him as a supporter of the Guatemalan military. The Board found that "[a]lthough the guerrillas taunted the respondent about his brother's participation in the Guatemalan army, the respondent testified that the guerrillas still sought to recruit him. [ ] Therefore, we agree that the respondent failed to establish that the guerrillas threatened him or beat him on account of one of the enumerated grounds, rather than to coerce him to join their ranks." Decision of the Board of Immigration Appeals, dated August 19, 1997, at 2.

In the past, the Court has found that similar inconsistencies in an alien's testimony supported the Board's determination that no political opinion had been imputed to an asylum applicant. *See De Valle v. INS,* 901 F.2d 787, 792 (9th Cir.1990) ("Here, the BIA offered such a reason. Evaluating [the petitioner's] testimony that he would be viewed as a guerrilla, the BIA observed that [the petitioner] had testified that if he returned to El Salvador, he would have to report for military duty. The BIA reasoned that '[i]t doesn't seem logical that if the army truly viewed [the petitioner] as a guerrilla due to his desertion, the army would desire to bring [him] back onto active duty.' This inconsistency in [the petitioner's] testimony also serves to undercut the persuasiveness of Rev. Kempff and Colonel Guerra y Guerra's assertions."). Under my standard of review, I must defer to the decision of the Board unless no reasonable factfinder could have reached the same conclusion. Although I might not necessarily conclude that the guerrillas' desire to induct Sebastian into their forces is logically inconsistent with their supposed belief that he supported their adversary, the Guatemalan military, I cannot say that no reasonable factfinder would reach that decision.

Because the Board incorporated the decision of the Immigration Judge, I must also consider the Immigration Judge's findings in order to determine whether the record compels a conclusion opposite to that of the Board. The Immigration Judge did not believe those portions of Sebastian's testimony concerning the guerrillas' threats related to his brother's military service. In rejecting Sebastian's asylum claim, the Immigration Judge rejected Sebastian's assertion that the guerrillas persecuted him on account of an imputed political opinion, concluding instead that the persecution was wholly the result of the guerrillas' efforts to recruit Sebastian into their ranks: "[The guerrillas] wanted him *not* because his brother was in the military and they imputed that brother's political opinion to the respondent, they wanted the respondent, by his own testimony, because he was a young, healthy male.... The recruitment was motivated by the fact that the respondent is a young,

788, 792 (9th Cir.1989). That presumption serves solely as a rule of thumb that conveniently allows the Court to consider whether the administrative authorities correctly interpreted the law. *See id.* ("The BIA based its decision solely on the legal issues considered above."). While that presumption has allowed the Court to determine that the administrative authorities misconstrued the law, it has never allowed the Court to find that the administrative authorities misconstrued the factual record before them. Therefore, this presumption will not allow me to use a portion of a petitioner's testimony that was explicitly rejected by the administrative authorities to find that the applicant was eligible for asylum.

healthy male, *not for any of the five grounds enumerated in the Act.*" Oral Decision of the Immigration Judge, June 19, 1996, at 11 (emphasis added). The Immigration Judge clearly found that "the guerrilla [sic] interest in the respondent is not based upon any political opinion imputed to the respondent." *Id.* at 12.

In deciding whether the administrative record *compels* a conclusion different from that reached by the administrative authorities, I am mindful of the deference that is owed to the Immigration Judge's determinations regarding Sebastian's testimony:

> Neither the [C]onstitution nor our decisions interpreting the federal immigration statutes requires that an immigration judge believe an alien's testimony that specific threats have been made against his life. Nor is an immigration judge required to believe the alien when his testimony is merely "unrefuted" and is "corroborated" by documentary evidence of general political violence in his country. An immigration judge alone is in a position to observe an alien's tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. *He is, by virtue of his acquired skill, uniquely qualified to decide whether an alien's testimony has about it the ring of truth. The courts of appeals should be far less confident of their ability to make such important, but often subtle, determinations.*

*Sarvia–Quintanilla v. INS,* 767 F.2d 1387, 1395 (9th Cir.1985) (emphasis added). Because of the deference owed to the administrative authorities, "[i]n reviewing the record, *we must defer to an immigration judge's express and implied findings* that the alien's testimony is not credible if the record supports such find-

ings." *Saballo–Cortez,* 761 F.2d at 1266 (emphasis added). "[T]he possibility of drawing two inconsistent conclusions from the evidence," without more, "does not prevent an administrative agency's findings from being supported by substantial evidence." *Singh–Kaur,* 183 F.3d at 1150.

Giving proper deference to the Immigration Judge, my review of the record indicates that Sebastian's testimony does not compel a conclusion contrary to that reached by the administrative authorities. In rejecting Sebastian's claim, the Immigration Judge clearly found that "the guerrilla interest in the respondent is not based upon any political opinion imputed to the respondent." *Id.* at 12. In reaching this conclusion, the Immigration Judge had to make an implicit credibility finding that was adverse to Sebastian because in determining that the persecution was not politically motivated, the Immigration Judge rejected that portion of Sebastian's testimony that indicated that the persecution was politically motivated.[8] Although implicit, that credibility finding is entitled to the same deference I must afford all of the administrative authorities' credibility findings, whether implicit or explicit. *See Saballo–Cortez,* 761 F.2d at 1266.

Based upon my review of the record, I find that substantial evidence supports that credibility finding because Sebastian's own testimony indicated that the guerrillas actually sought to recruit him, as well as other healthy young men, to bolster their ranks. Sebastian testified that the guerrillas would come into his village and take boys older than sixteen. He explained that the guerrillas took these boys because the guerrillas "wanted their numbers to grow, they wanted them to be much bigger and so that they had the power to go in and take things." Transcript of Hearing,

8. Sebastian had testified that "the guerrillas, you know, would see me from time to time or talk to me and they said I have the same attitude or the same mind as my brother since he went with the—with the others and so they would tell me that from time to time." Transcript of Hearing, June 19, 1996 at 41. Se-

bastian also testified that the guerrillas would threaten him because his brother was in the Guatemalan military: "[B]ecause of my brother who went with the military, they would—they would uh, threaten me and they would hit me and they would uhm, curse me." *Id.*

June 19, 1996, at 36. His testimony also indicated that his own troubles with the guerrillas only began when they came to his house, realized that he was old enough to join their ranks, and were refused when they asked his father if Sebastian would join them.[9] Thus, substantial evidence, in the form of Sebastian's own testimony, supports the Immigration Judge's decision to credit some portions of Sebastian's testimony (those that indicated that the guerrillas' persecution was an effort to coerce him into joining their ranks) and reject other portions of Sebastian's testimony (those limited portions of his testimony that suggested that the guerrillas' persecution was, at least in part, due to a political opinion imputed to him because of his brother's military service). As such, I feel that a reasonable factfinder could have made the same implicit credibility finding made by the Immigration Judge and reached the same conclusion as the administrative authorities.

In reaching this conclusion, I recognize that, although I may be sympathetic to Sebastian's plight, I am in a far different position from those rare cases, such as in our recent opinion in *Tarubac v. INS*, 182 F.3d 1114 (9th Cir.1999), in which the Immigration Judge makes a blanket credibility finding favorable to the asylum applicant. In *Tarubac*, we indicated that "the presence of a nonpolitical motive for persecution does not, without more, prove the absence of a political motive" in those rare cases in which the Immigration Judge finds the petitioner's testimony to be "sincere and genuine" and gives "full weight as evidence" to the alien's testimony. *Tarubac*, 182 F.3d at 1119, 1117. If the Immigration Judge had made such a blanket credibility finding, I could easily grant Sebastian's petition because his testimony about the guerrillas would have estab-

lished a prima facie case of eligibility because Sebastian's testimony about the guerrillas' statements provided the causal link between an imputed political opinion and their persecution of Sebastian. If the Immigration Judge had made a blanket credibility finding like that in *Tarubac*, the second requirement of Sebastian's burden of proof would have been satisfied, and I would be free to scour the record for any testimony that would establish the applicant's eligibility. In this case, however, the Immigration Judge did not make such a blanket credibility finding. Therefore, I cannot rely upon the mere existence of one portion of Sebastian's testimony that would have established a prima facie case of asylum eligibility, *a portion that was explicitly rejected by the Immigration Judge*, unless I seek to substitute my view of the record for that of the Immigration Judge. *See Prasad*, 47 F.3d at 340 ("We are not permitted to substitute or view of the matter for that of the Board.")

Under my standard of review, which defers to the administrative authorities in such matters, I cannot simply substitute my view of the record for that of the Immigration Judge, no matter how sympathetic I am to Sebastian's claims, because the Immigration Judge is in a much better position and has much greater expertise in determining which portions of a petitioner's testimony are credible and which are not. Thus, I cannot engage in a de novo review of the administrative record, choosing to credit portions of a petitioner's testimony that the Immigration Judge explicitly rejected, simply because I am sympathetic to the petitioner. *See Diaz–Escobar v. INS*, 782 F.2d 1488, 1492 (9th Cir.1986). Instead, I can only reach a decision contrary to that of the administrative authorities where the record is "so compelling that no reasonable factfinder

---

9. In explaining about when his troubles with the guerrillas began in 1990, when he was 16 years old, Sebastian testified: "And when uh, they were going around to each of the houses they came to my house and they saw me and they saw that I was uh,—I was old enough

and they wanted uh, me to join them" and that "they told my dad—my father that they wanted me and he said, no. He uh,—he negated them or said no to them." Transcript of Hearing, June 19, 1996, at 32.

could find" that Sebastian has not established asylum eligibility. *See Elias–Zacarias*, 502 U.S. at 483–84, 112 S.Ct. 812. This deferential review results not only from the superior position of the Immigration Judge in assessing which portions of the applicant's testimony are credible and his greater expertise in making such assessments, *see Sarvia–Quintanilla*, 767 F.2d at 1395, but, as the Supreme Court has explained, because "[i]n this government of separated powers, it is not for the judiciary to usurp Congress' grant of authority to the Attorney General by applying what approximates de novo appellate review." *INS v. Rios–Pineda*, 471 U.S. 444, 452, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985).

Because the Immigration Judge implicitly rejected those portions of Sebastian's testimony concerning the guerrillas' comments about his brother's military service, by finding that the persecution was not due to an imputed political opinion related to his brother's military service, this case is decidedly different from our recent en banc opinion in *Borja v. INS*, 175 F.3d 732 (9th Cir.1999) (en banc). In *Borja*, the Immigration Judge found the petitioner's testimony to be "credible, consistent, forthright, and 'sincere in all respects.'" *Borja*, 175 F.3d at 734. In this case, however, the Immigration Judge rejected those portions of Sebastian's testimony that could have established Sebastian's eligibility: that he was persecuted on account of an imputed political opinion. In rejecting those portions of Sebastian's testimony that claimed that the guerrillas persecuted him on account of an imputed political opinion, the Immigration Judge found that this case involved persecution solely as part of the guerrillas' recruitment efforts,

a non-protected ground. *See INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). This case is therefore one of apolitical persecution rather than a case of mixed-motive persecution such as was at issue in *Borja*. Although our en banc opinion in *Borja* clarified that mixed motive persecution, persecution that was "at least in part" on account of a protected ground, is sufficient to establish asylum eligibility, *see Borja*, 175 F.3d at 736, our court did not alter our deferential standard of reviewing the administrative authorities' decisions. *See id.* at 738 ("[W]e note that we have taken care not to exceed our authority, and *not to second-guess the BIA*.") (emphasis added). Because the administrative authorities determined that the guerrillas' persecution was solely an effort to coerce him into joining their ranks, in the absence of evidence that compels a contrary conclusion I must consider this to be a case involving solely non-politically motivated persecution, rather than the mixed-motive persecution at issue in *Borja*. Based upon my review of the record, the evidence does not compel me to find that this is actually a case of mixed-motive persecution.[10]

Because my review of the record reveals that the Board and the Immigration Judge reasonably rejected those portions of Sebastian's testimony that provide the necessary causal link between the guerrillas' persecution of Sebastian and the political opinion that they purportedly imputed to him, I have no choice but to vote to deny Sebastian's petition. My decision in this case is controlled by our long line of standard of review precedents, which require the Court to defer to the administrative authorities regarding determinations like

---

10. Sebastian also sought a withholding of deportation. The Attorney General must withhold deportation if an alien's "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h). Because I have determined that substantial evidence supports the Board's determination that any future persecution by the guerrillas would be on account of his refusal to join their forces, rather than because of an imputed political opinion, substantial evidence also supports the Board's determination that Sebastian failed to provide the requisite causal link between any future persecution necessary to qualify for a withholding of deportation.

those at issue in this case. Although Sebastian's testimony *might* have persuaded the administrative authorities that the guerillas' persecution of him was on account of an imputed political opinion, or might have persuaded us if I were in a position to consider his testimony in the first instance, a reasonable factfinder could have concluded, as the Board and Immigration Judge did, that Sebastian failed to meet his burden of establishing that any past or future persecution was causally related to a political opinion imputed to him by the guerrillas. Because the record does not compel a conclusion contrary to that reached by the Board, I vote to affirm its findings even though I am sympathetic to Sebastian's plight and might have reached a conclusion different to that of the Board if I reviewed the administrative record in the first instance. Sympathy alone is an insufficient basis to ignore the reasonable findings of the administrative authorities, to which the primary responsibility of making those findings has been given by Congress.

I concur, therefore, in the Court's judgment to DENY Sebastian's petition.

BRUNETTI, Circuit Judge, specially concurring:

I concur only in the result reached by Judge Wiggins because an implicit credibility finding is not necessary for the resolution of this case.

We review the BIA's conclusion that Sebastian "failed to meet his burden of proof to establish his eligibility for asylum" for substantial evidence. *See Singh v. INS*, 134 F.3d 962, 966 (9th Cir.1998). Under this standard of review, we must determine whether the evidence viewed as a whole *compels* the conclusion that the harm the guerillas inflicted upon Sebastian was motivated by an imputed political opinion. *See Borja v. INS*, 175 F.3d 732, 737 (9th Cir.1999) (en banc); *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995). The evidence in this case-Sebastian's testimony-viewed as a whole does not compel

the conclusion that the guerillas actions were motivated by an imputed political opinion because *all* of the evidence demonstrates that the guerillas were motivated exclusively by a desire to coerce Sebastian into their ranks.

Prior to 1990, the guerillas ignored Sebastian because he was too young to join their forces. In 1990, however, after Sebastian reached the age of sixteen, the guerillas no longer ignored Sebastian and ·initiated attempts to coerce him into their forces. The impetus of the guerillas' persecution was, therefore, the desire to recruit Sebastian. The guerillas came to Sebastian's village regularly after 1990 seeking food, money, and new recruits and Sebastian would either hide from the guerillas or be beaten and threatened for not joining the guerillas. The guerillas continued to threaten and beat Sebastian periodically for four years as they attempted to force him into their ranks. In 1994, Sebastian's younger brother was conscripted into military service for the government and after that occurred the guerillas commented on one occasion that Sebastian had the same attitude as his brother. Thus, on one occasion in four years, the guerillas did mention a political opinion when they harassed Sebastian, but that does not demonstrate that any of the attacks on Sebastian were actually *motivated* in part by an imputed political opinion. The evidence, examined as a whole, therefore, demonstrates that the guerillas were continuously and exclusively motivated by a desire to recruit Sebastian rather than by a political opinion they imputed to him and that, in and of itself, is not sufficient to warrant a discretionary grant of asylum. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481–83, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

Sebastian's testimony regarding why he left Guatemala and why he does not want to return further supports the conclusion that the guerillas were motivated exclusively by a desire to recruit Sebastian rather than by an imputed political opinion. Sebastian left Guatemala the day af-

ter his last beating because he did not want to join the guerillas and because he only had three days to join the guerillas or leave Guatemala. Sebastian did not, therefore, leave Guatemala because he feared future persecution on account of his brother's military service. He testified that he could not move to another region of Guatemala because the guerillas would find him and his refusal to join the guerillas (not his brother's military service) put his life in jeopardy. Sebastian also testified that he was afraid to return to Guatemala because he ignored the guerillas ultimatum by leaving Guatemala rather than joining their forces. Sebastian's fear of persecution, therefore, stems not from an imputed political opinion based on his brother's military service but from a fear of forced recruitment.

Because the evidence in this case viewed as a whole does not compel the conclusion that the guerillas actions were ever motivated by an imputed political opinion, substantial evidence supports the BIA's decision and Sebastian's petition for review must be denied. I, therefore, concur in the result reached by Judge Wiggins.

PREGERSON, Circuit Judge, dissenting:

I dissent. Today this panel produces three different views in resolving Sebastian's case. Judge Brunetti would affirm the Board because he believes that "*all* of the evidence demonstrates that the guerillas were motivated exclusively by a desire to coerce Sebastian into their ranks." *Supra* at 514. Judge Wiggins would affirm the Board based on what he believes is an adverse credibility finding implicit in the Board's decision. I would reverse because I believe that Sebastian has established that he was persecuted and that he has a well-founded fear of future persecution on account of imputed political opinion.

I disagree with Judge Brunetti's position that all the evidence demonstrates that the guerillas' actions were motivated solely by a desire to recruit Sebastian. I believe,

and Judge Wiggins agrees, that if we accept Sebastian's unrefuted testimony as true, it is reasonable to believe that the harm Sebastian suffered was, *at least in part,* on account of an imputed political opinion.

I disagree with Judge Wiggins's position that the Board made an implicit adverse credibility finding. Under Ninth Circuit jurisprudence, an adverse credibility finding must be explicit, otherwise credibility will be presumed. *See* discussion *infra.* The Immigration Judge, the Board of Immigration Appeals ("Board"), and the Immigration and Naturalization Service ("INS") have never said that they questioned Sebastian's credibility. Moreover, because Sebastian's credibility was not questioned in the hearings below, or raised as an issue in the briefs in this appeal, Sebastian never had notice that his case would turn on his credibility. Consequently, I believe that the denial of Sebastian's asylum petition based upon a sua sponte identification of an "implicit" adverse credibility finding violates due process. *See* discussion *infra.* Accordingly, I dissent.

I.

Sebastian is a native of Guatemala. In Guatemala, a violent guerilla group exists that opposes the Guatemalan government and seeks its overthrow. Sebastian testified that this guerilla group committed a series of acts of persecution against him and his family. In 1990, the guerillas forced Sebastian and his family to leave the coffee plantation where they lived and worked. The guerillas burned down their home and forced the plantation owner to close the plantation. As a result, Sebastian and his family moved back to their hometown of Huehuetenango.

Sebastian and his family did not escape guerilla violence in Huehuetenango. The guerillas entered Huehuetenango weekly to take food and money away from the villagers. They molested women. They forced young boys to join their ranks. In

1993, Sebastian witnessed the guerillas take his grandfather to the village center and beat him to death in front of all of the villagers. Sebastian testified that he continues to have nightmares about this traumatic incident. In addition, the guerillas abducted, molested, and eventually murdered Sebastian's younger sister.

In 1990, Sebastian's brother joined the Guatemalan Army, which opposes the guerillas. Sebastian testified that when he was sixteen the guerillas unsuccessfully attempted to recruit him. After the guerillas' first attempt to recruit him, Sebastian tried to hide whenever they came to his village. His efforts were not always successful. On six different occasions, the guerillas nearly beat Sebastian to death—twice at his workplace and four times at his home. While beating Sebastian, the guerillas told him that he was of the "same mind" or "same attitude" as his brother who was serving in the Guatemalan Army. Sebastian requested political asylum in the United States in part to avoid the persecution he faced in Guatemala from the guerilla forces.

## II.

To be eligible for asylum under the Immigration and Naturalization Act, an applicant must show that he or she is "unwilling or unable" to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, *or political opinion.*" 8 U.S.C. § 1101(a)(42)(A) (emphasis added). This court has held that if an applicant can establish "imputed political opinion" he or she can qualify for asylum under the Act. *Sangha v. INS*, 103 F.3d 1482, 1489 (9th Cir.1997). The applicant bears the burden of establishing eligibility for asylum, which may be established "through his own testimony alone." *Id.* at 1487; *see also Lopez–Reyes v. INS*, 79 F.3d 908, 912 (9th Cir.1996) ("the case law emphasizes that the applicant's testimony, if unrefuted and credible, is suffi-

cient. . . ."); *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir.1984) (stating that to require an applicant to present corroborating evidence would make it close to impossible for an applicant to make out a case).

Sebastian testified that "because of my brother who went with the military, [the guerillas] would . . . threaten me and they would hit me and they would . . . curse me." Sebastian further testified that he was "almost killed" by the guerillas and that while they were beating him, they told him that he was of the "same mind" or "same attitude" as his brother.

In light of this undisputed testimony, Judge Wiggins states in his opinion, and I agree, that if taken as true, Sebastian's testimony compels reversal:

> Sebastian would have, therefore, established that the guerrillas' persecution of him was on account of a protected ground if he had established that the guerrillas persecuted him because they believed that he was aligned with the Guatemalan military due to his brother's forced service in the military. If this portion of his testimony was believed, his testimony would have shown that the guerrillas' persecution was on account of an imputed political opinion, even if the persecution was also motivated by efforts to increase the guerrillas' ranks.

*Supra* at 508–09.

This conclusion is mandated by our recent en banc opinion in *Borja v. INS*, 175 F.3d 732 (9th Cir.1999). *Borja* is an asylum case that is factually similar to Sebastian's case. In *Borja*, the en banc panel reversed the Board and held that an applicant can establish eligibility for asylum by producing "evidence from which it is reasonable to believe that the harm was motivated, *at least in part,* by an actual or implied protected ground." 175 F.3d at 736 (quoting *In re T–M–B–*, Interim Dec. No. 3307 (BIA Feb. 20, 1997)) (emphasis added). *See also Tarubac v. INS*, 182 F.3d 1114, 1118–20 (9th Cir.1999) (applying

*Borja* in another mixed-motive political asylum case).[1] In the present case, Sebastian's testimony provides evidence "from which it is reasonable to believe that the harm was motivated, at least in part, by an actual or implied protected ground." *Borja*, 175 F.3d at 736.

### III.

Thus, I agree with Judge Wiggins that Sebastian's testimony, if believed, compels reversal. But Judge Wiggins's position is that the Board and the Immigration Judge implicitly rejected the "crucial aspects" of Sebastian's testimony pertaining to his persecution.[2] *Supra* at 510. This is where Judge Wiggins and I part company.

I respectfully submit that Judge Wiggins's affirmance of the Board based on an implicit adverse credibility finding is inconsistent with this court's precedent. We have consistently held that (1) we presume a petitioner credible when the Board is silent on credibility; and (2) the Immigration Judge and the Board must expressly articulate and support their credibility

1. Judge Wiggins states that *Tarubac* and *Borja* only control the "rare" cases "in which the Immigration Judge makes a blanket credibility finding favorable to the asylum applicant." *Supra* at 512. I respectfully disagree because (1) this disregards our circuit's rule that absent an express credibility finding from the Board, we presume an asylum applicant's testimony is true, *see* discussion *infra*, and (2) there is nothing in the language of *Tarubac* or *Borja* indicating that those decisions are so limited.

2. Judge Wiggins states that the Board made "explicit" what the Immigration Judge "implicitly relied upon in rejecting the crucial aspects of Sebastian's testimony...." *Supra* at 510. To support this assertion, Judge Wiggins quotes the Board's statement that:

   Although the guerillas taunted the respondent about his brother's participation in the Guatemalan army, the respondent testified that the guerrillas still sought to recruit him. [ ] Therefore, we agree that the respondent failed to establish that the guerillas threatened or beat him on account of one of the enumerated grounds, rather than to coerce him to join their ranks.

   *Id.* Because this statement does not include any mention of "credibility," "doubt,"

findings, especially where credibility is the deciding factor. *See* discussion *infra*. Additionally, no evidence in the record supports Judge Wiggins's position that the Board and the Immigration Judge parsed Sebastian's testimony, disbelieving certain portions while believing others. In fact, the Immigration Judge and the Board relied exclusively on Sebastian's testimony in recounting the facts and applying the law.

### A.

Neither the Board nor the Immigration Judge made any mention whatsoever of Sebastian's credibility. They did not express any doubt as to his sincerity, nor did they find him evasive, unresponsive, or inconsistent. "When the Board's decision is silent on the question of credibility ... we will presume that the Board found the petitioner credible, and ... proceed to review the Board's decision." *Damaize–Job v. INS* 787 F.2d 1332, 1338 (9th Cir.1986). The presumption of credibility clearly is applicable in the instant case.[3] *See, e.g.,*

"truth," "inconsistency," or use any other of a number of words that can be used to express doubt in the sincerity of the witness, I cannot agree with Judge Wiggins that the Board in fact made an "explicit" credibility finding. Indeed, the introductory clause to the statement quoted above clearly indicates that the Board in fact believed Sebastian's testimony that the "guerillas taunted [him] about his brother's participation in the Guatemalan army."

Similarly, Judge Wiggins's assertion that the Immigration Judge "explicitly" rejected the critical aspects of Sebastian's testimony is based on a statement by the Immigration Judge wherein he expressly states that his decision relies on Sebastian's own testimony.

3. Judge Wiggins states that an implicit credibility finding "is entitled to the same deference I must afford all of the administrative authorities' credibility findings, whether implicit or explicit" *supra* at 511 and relies on *Saballo–Cortez v. INS*, 761 F.2d 1259, 1266 (9th Cir.1985) for this proposition. But in *Saballo–Cortez*, "the immigration judge found that Saballo–Cortez was not a credible witness" and "the BIA also discredited Saballo–Cortez's testimony." *Id.* at 1266. The Immigration Judge and the Board supported their

*Maldonado–Cruz v. INS,* 883 F.2d 788, 792 (9th Cir.1989) ("[a]lthough the IJ expressed some concern about Maldonado's credibility" the presumption was appropriate because "there [was] no clear indication that the IJ disbelieved the basic facts upon which we make our legal determination now."); *Artiga Turcios v. INS,* 829 F.2d 720, 723 (9th Cir.1987) (because neither the Immigration Judge nor the Board found that Petitioner's testimony was not credible, we noted "without such a finding, we accept his testimony as credible...."); *Canjura–Flores v. INS,* 784 F.2d 885, 888–89 (9th Cir.1985) (although the Immigration Judge found petitioner's testimony speculative, because the Board made no express credibility finding, this court held that "[w]ithout such a finding, we accept Canjura–Flores's testimony as credible"). As we stated in *Canjura–Flores,* absent an express adverse credibility finding, we must presume that a petitioner's testimony is credible because *"[a]ny other rule would put us in the position of second-guessing the credibility of the petitioner on appeal when no doubts have been raised by the Immigration Judge or the Board." Canjura–Flores,* 784 F.2d at 888–89 (emphasis added).

In denying Sebastian's petition, the Board made no explicit credibility findings, nor did it express any doubt as to Sebastian's credibility. Because the Board was silent on the issue of Sebastian's credibility, as a matter of law we must presume Sebastian's testimony to be credible.

### B.

Judge Wiggins states that we must afford deference to "all of the administrative authorities' credibility findings, whether implicit or explicit." *Supra* at 511. I believe this to be an incorrect statement of

the law regarding deference to *implicit* credibility findings in an immigration case.

We review adverse credibility findings under the substantial evidence standard. *See Lopez–Reyes v. INS,* 79 F.3d at 911. In doing so, we look for "specific cogent" reasons that support the adverse credibility finding. *Id.* The Immigration Judge and the Board must set forth substantial evidence in support of the adverse credibility finding: "Although this standard is deferential, the Immigration Judge must offer a specific cogent reason for his adverse credibility finding, and the reason set forth must be substantial and must bear a legitimate nexus to the finding." *Id.* (internal quotation marks and citations omitted). *See also Stoyanov v. INS,* 172 F.3d 731, 736 (9th Cir.1999) (the Board must offer a "legitimate articulable basis" for an adverse credibility finding and "must offer a specific cogent reason for any stated disbelief"); *Vilorio–Lopez v. INS,* 852 F.2d 1137, 1141 (9th Cir.1988) ("an IJ who rejects testimony for lack of credibility must offer a 'specific, cogent reason' for the rejection") (citations omitted). An "implicit" credibility finding, by definition, fails to meet these requirements.

Moreover, where a case turns on an applicant's credibility, the Immigration Judge must make an even "more explicit and direct finding." *Aguilera–Cota v. INS,* 914 F.2d 1375, 1383 (9th Cir.1990). "[O]n a matter as important as this, if an asylum applicant's plea is to be rejected and he is to be returned home—possibly to face renewed threats to his life—simply because an IJ doubts his credibility, the IJ must make a more explicit and direct finding that [the petitioner] is untruthful than was made here. *The mere statement that a petitioner is 'not entirely credible' is not enough." Id.* at 1383 (emphasis added). Here, we have no statement whatsoever

explicit credibility findings by pointing to substantial inconsistencies in Saballo–Cortez's application and testimony and "to other portions of the testimony which cast doubt on Saballo–Cortez's veracity." *Id.* at 1263–64.

In contrast, here, neither the Immigration Judge nor the Board expressed any doubt as to the veracity of the facts as Sebastian recounted them. Accordingly, *Saballo–Cortez* is inapposite.

from the Immigration Judge or the Board that cast doubt on Sebastian's credibility.[4]

## C.

The record is devoid of any suggestion that the Immigration Judge parsed Sebastian's testimony, believing some portions and disbelieving others. Consequently, Judge Wiggins's conclusion that "[t]he Immigration Judge did not believe those portions of Sebastian's testimony concerning the guerillas' threats related to his brother's military service" is without support in the record. Rather, the evidence suggests that the Immigration Judge "generally believed the petitioner's story, but simply ruled that the facts do not warrant the relief requested." *Maldonado–Cruz*, 883 F.2d at 792 n. 7.

## IV.

As a final matter, during Sebastian's hearings, the Immigration Judge did not express any disbelief about Sebastian's testimony. To the contrary, in the Immigration Judge's oral decision he adopted Sebastian's testimony in recounting the facts and applying the law. The INS did not challenge Sebastian's credibility in its briefs to the Board or to this court. In short, before today's decision, Sebastian had *no notice* that his credibility was at issue. Because Sebastian received no notice that his case would turn on his credibility and because he was not accorded an opportunity to defend his credibility, today's decision denies him due process. *See Stoyanov*, 172 F.3d at 735 (because the Board made an adverse credibility finding without affording petitioner any opportunity to explain the supposed inconsistencies in his testimony due process required that we "vacate the denial and remand to allow

[petitioner] a reasonable opportunity to explain those inconsistencies"); *Campos–Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999) (because petitioner had "not been advised below that his credibility was questionable" the Board's denial of his asylum petition without the opportunity to explain any alleged inconsistencies was a denial of due process).

## V.

Sebastian established that he was persecuted *at least in part* because of his brother's participation in the Guatemalan Army. He therefore qualified for asylum because of an "imputed political opinion." I believe that because the Immigration Judge found that the guerrillas were motivated by a desire to recruit Sebastian, the Immigration Judge ruled that Sebastian was not persecuted on a protected ground. Perhaps the Immigration Judge, lacking the guidance of this court's later decisions in *Borja* and *Tarubac*, disregarded the evidence that Sebastian's persecution was *at least in part* on account of the political opinion the guerillas imputed to him.[5]

Judge Wiggins agrees that Sebastian's testimony that the guerillas beat him for having the "same mind" as his brother, if believed, compels reversal of the Board's decision. The Immigration Judge did not, expressly or impliedly, cast doubt on Sebastian's sincerity or credibility. The law requires us to accept Sebastian's testimony as true. Consequently, we should reverse the Board's denial of Sebastian's asylum petition.

For all the above reasons, I dissent.

---

4. Additionally, in the instant case, as stated in *Aguilera–Cota*, "there is ... 'a total absence of contradictory evidence in the record as a whole that [would] potentially undermine[ ] [the petitioner's] credibility. Under these circumstances, *we accept the testimony as true.*" *Id.* at 1383 (internal quotations marks and citation omitted, emphasis added).

5. Note that recently, this court in *Tarubac*, found that "the presence of a nonpolitical motive, does not, without more, prove the absence of political motive." *Tarubac v. INS*, 182 F.3d at 1119. Indeed, under the rule in *Tarubac*, the Immigration Judge's finding that the guerillas wanted to recruit Sebastian "is largely irrelevant to [Sebastian's] eligibility for asylum." *Id.*