**Jose M. SARVIA–QUINTANILLA, Petitioner,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 84–7485.**

United States Court of Appeals, Ninth Circuit.

Submitted * June 13, 1985.

Decided Aug. 8, 1985.

As Amended Aug. 19, 1985.

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 3(f) and Fed.R.App.P. 34(a).

Peter R. Ruiz, Phoenix, Ariz., for petitioner.

Richard K. Willard, Lauri Steven Filppu, Joan E. Smiley, Washington, D.C., for respondent.

Before SNEED and BEEZER, Circuit Judges, and RAFEEDIE,** District Judge.

SNEED, Circuit Judge:

Jose Mauricio Sarvia-Quintanilla petitions this court for review of the Immigration and Naturalization Service's denial of his application for political asylum and withholding of deportation. Because substantial evidence supports the decision of the Board of Immigration Appeals, we deny his petition.

## I.

### FACTS AND PROCEEDINGS BELOW

The petitioner is a twenty-six year old native and citizen of El Salvador. Before he left his country, he joined the Forces Revolutionales el Loranes (F.R.S.), a leftist political group organized to help poor people and to "overthrow the government." After a few months in the F.R.S. the petitioner says that he realized that some members of the group intended to oppose the Salvadoran government with violence. Because he opposed their violent tactics, the petitioner decided to leave the group. After he told the other members of the group about his decision, the petitioner says that he heard that some of them had threatened to kill him.

The petitioner also says that he is afraid of the government in El Salvador. His older brother killed two men who worked for the government and the petitioner fears that retaliation for his brother's crime might be directed at him. The petitioner also fears that the government will punish him for his brief association with the F.R.S.

In September 1978, the petitioner left El Salvador for Mexico, where he stayed for five months. Then in February 1979 he illegally entered the United States. Sometime later he was deported to Mexico, but returned to the United States, again without inspection.

In December 1980, the petitioner was ordered by the INS to show cause why he should not be deported. In April 1981, at his deportation hearing, the petitioner admitted deportability and requested political asylum in the United States.

At the hearing at which his request for asylum was considered, the petitioner introduced into evidence affidavits from two of his aunts, his mother, and an attorney, all of whom live in El Salvador. The affidavits indirectly supported the petitioner's testimony; one warned that if he returned to El Salvador he "runs the risk of being assassinated." The petitioner also introduced newspaper articles that discussed, in general terms, the problem of terrorism and lawlessness in El Salvador.

The immigration judge admitted a letter from the U.S. State Department that read in part: "Upon careful review of the information submitted, it is our view that the subject has failed to establish a well-founded fear of being persecuted upon return to El Salvador.... We do not have any information regarding his request for asylum to bring to your attention." At the hearing, the petitioner's lawyer asked that he be allowed time to submit more documents to the State Department to support his client's request for asylum. The State Department apparently made its recommendation without having seen any of the affidavits submitted by the petitioner at the hear-

** Honorable Edward Rafeedie, United States District Judge for the Central District of California, sitting by designation.

ing. The immigration judge denied the request on the ground that the affidavits were little more than "emotional appeal[s] to let the [petitioner] stay in the United States. They do not provide any substan[tive] information that the State Department could make any kind of a determination with respect to."

The immigration judge then denied the petitioner's request for asylum. He said in part:

It appears that the [petitioner's] fear of returning to El Salvador is primarily fear of retaliation from his friends. The [petitioner] testified that he has not heard from his friends since departing El Salvador about September of 1978 and he does not know whether they are still in El Salvador or even if they are alive or dead....

I am not satisfied that there is a reasonable fear that the [petitioner] would suffer persecution or other harm if he returns to El Salvador. The [petitioner] admitted that he has lied to suit his needs, his credibility is very much in doubt. For that reason, I accord his testimony very little weight. Even if I believed everything the [petitioner] said, however, I still find no basis upon which to grant his application.

The immigration judge clearly doubted the truth of much of the petitioner's testimony:

The [petitioner] admitted that he has lied to suit his purposes. He lied to get the Mexican passport in Mexico. He lied in order to be deported to Mexico. It appears that [he] will tell whatever story he feels will benefit his situation at the time.

Finally, the immigration judge denied the petitioner's request for voluntary departure and ordered that he be deported to England. If England does not accept him, the petitioner will be deported to El Salvador.

The Board of Immigration Appeals accepted the immigration judge's findings and dismissed the petitioner's appeal. He then filed this petition for review.

## II.

## DISCUSSION

When an alien seeks to avoid deportation because he fears he will be persecuted for his political opinions or activity, two separate provisions of the immigration laws become relevant. Section 208(a) of the Refugee Act of 1980 (codified at 8 U.S.C. § 1158(a) (1982)), allows political "refugees" to be granted asylum in this country. Section 243(h) of the Immigration and Nationality Act, as amended by section 203(e) of the Refugee Act (codified at 8 U.S.C. § 1253(h) (1982)), prohibits the Attorney General from deporting any alien who would be subject to political persecution if returned to his country.

An alien who fears persecution files an INS form called "Request for Asylum in the United States." When the request for asylum pursuant to section 208(a) is made after the initiation of deportation proceedings, it is also treated as a request for relief under section 243(h). 8 C.F.R. § 208.3(b) (1985). The Immigration Judge and the Board of Immigration Appeals are then required to evaluate the alien's application under the criteria of both section 243(h) and section 208(a).

### A. Section 243(h): The "Clear Probability" Standard

Section 243(h) prohibits the Attorney General from deporting an alien to a country in which his "life or freedom would be threatened on account of," among other things, his "membership in a particular social group, or [his] political opinion." The Supreme Court has held that the 1980 amendments to the immigration laws did not lower the burden of proof that an alien must satisfy under section 243(h). He still must show a "clear probability" of persecution.[1] *INS v. Stevic*, —— U.S. ——, 104

---

**1.** In addition to showing (1) a likelihood of persecution, an alien who seeks to have his deportation prohibited must also show (2) that the source of the likely persecution is either the

S.Ct. 2489, 2500–01, 81 L.Ed.2d 321 (1984). The "clear probability" standard requires that the alien show that "it is more likely than not" that he will be persecuted. *Id.* 104 S.Ct. at 2498. If the alien can meet his burden of proof, however, the Attorney General no longer enjoys his traditional discretionary authority to order or withhold deportation. The alien simply cannot be deported.[2] *Id.* at 2496 n. 15.

■ We have attempted to specify the nature and amount of proof that will meet the clear probability standard of section 243(h). It has been said that "mere assertions of possible fear" are insufficient to establish a clear probability of persecution. *Shoaee v. INS,* 704 F.2d 1079, 1084 (9th Cir.1983). In addition, we have said that relief under section 243(h) requires "some factual support", some "concrete evidence", to support the claim that persecution is likely. *Id.; Khalil v. District Director of the INS,* 457 F.2d 1276, 1278 (9th Cir.1972). Each case, however, must be evaluated on its own merits to determine whether the alien's factual support and concrete evidence are sufficient to establish a clear probability of persecution. *See McMullen v. INS,* 658 F.2d 1312, 1317 (9th Cir.1981).

In *Bolanos-Hernandez v. INS,* 749 F.2d 1316 (9th Cir.1984), we discussed the clear probability standard in the context of a case in which the only direct evidence of persecution was the alien's own testimony that specific threats had been made against his life. In that situation, we held that such uncorroborated testimony was sufficient to establish a clear probability of persecution but only because (1) the alien offered general documentary evidence indicating that the threats should be considered serious ones; and (2) the immigra-

tion judge found no reason to question the alien's credibility. *Id.* at 1323, 1326. *See also Saballo-Cortez v. INS,* 761 F.2d 1259 at 1264 n. 3 (9th Cir.1984) (holding that the rule in *Bolanos-Hernandez* applies only when no question has been raised concerning the alien's credibility and no doubt is expressed that threats were actually made).

■ Here the petitioner testified that specific threats had been made against his life. He offered no evidence that directly corroborated his testimony; instead he introduced four affidavits from citizens of El Salvador and several published articles discussing, in general terms, the problem of political violence in his country. Under the circumstances of this case, however, evidence of this sort cannot, by itself, meet the petitioner's burden of proving a clear probability of persecution. *Zepeda-Melendez,* 741 F.2d 285, 289–90 (9th Cir.1984).

Three of the four affidavits offered by the petitioner were from close relatives. Their appeals are, of course, moving, but none of them corroborated the petitioner's testimony that specific threats had been made against him. Nor did any of them say that the members of the F.R.S. were still looking for the petitioner or that they would threaten his life or freedom if he returned to El Salvador.

The fourth affidavit was from an a Salvadoran lawyer. It said that the petitioner "runs the risk of being assassinated if he returns to Salvadorian territory." The affidavit did not, however, explain the basis for the lawyer's belief and at the hearing the petitioner admitted that he did not even know the lawyer. The immigration judge reasonably concluded that the lawyer's lack of familiarity with the petitioner's case "re-

government of his country or a group that the government is unable or unwilling to control; (3) that he would be persecuted because of his race, religion, nationality, membership in a particular social group, or political opinion; and (4) that he is not a danger or a security risk to the United States. *See Zepeda-Melendez v. INS,* 741 F.2d 285, 289 (9th Cir.1984); 8 U.S.C. § 1253(h) (1982).

The dispute in this case concerns only whether the petitioner has demonstrated a likelihood of persecution.

2. Because the relief offered by section 243(h) is no longer discretionary, we now review the BIA's denial of an application for a "prohibition" of deportation under a heightened "substantial evidence" standard. *See Bolanos-Hernandez,* 749 F.2d 1316, 1320 n. 8 (9th Cir.1984).

duc[ed] the impact of that particular affidavit considerably."

The petitioner also introduced some newspaper and magazine articles that discussed political violence in El Salvador. None of this material specifically refers to the petitioner or to the group from which he allegedly fled. In short, neither the affidavits nor the newspaper articles directly corroborated the petitioner's claim that his life had been threatened.

■ We have recognized, however, that it is often difficult for an alien fleeing persecution to prove his claim that specific threats have been made against him. For that reason, we do not require that an alien produce direct evidence of the threats, as long as his own testimony is unrefuted and credible. *Bolanos-Hernandez*, 749 F.2d at 1323-24, 1326.

In this case, however, the immigration judge specifically found that the petitioner's credibility was "very much in doubt." The record contains substantial evidence to support this conclusion. At his hearing, the petitioner admitted that he had lied in order to get a Mexican passport and that he then travelled under an assumed name. He also admitted that he had lied under oath to U.S. immigration officials so that he would not be deported to El Salvador. Finally, he conceded that he had been convicted of illegally bringing aliens into the United States. Given the petitioner's admitted history of dishonesty, the immigration judge's decision to give his testimony "very little weight" was the only reasonable one. Because he was unable to offer any direct, credible evidence that specific threats had been made against his life or freedom, his application for a prohibition of deportation was properly denied.

B. *Section 208(a): The "Well-Founded Fear" of Persecution Standard*

■ Failing to show a "clear probability" of persecution, the petitioner is eligible for a discretionary grant of asylum if he can show that he is a "refugee" within the meaning of section 101(a) of the Refugee Act of 1980. The Act's definition of refugee includes those aliens "who [are] unable or unwilling to return to ... [their] country because of persecution or a well-founded fear of persecution on account of ... membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1982). Upon a showing of a "well-founded fear of persecution" the Attorney General may, in his discretion, grant asylum pursuant to section 208(a).[3] *See* 8 U.S.C. § 1158(a) (1982).

The Supreme Court has suggested, and we have recently held, that the "well-founded-fear standard [of section 208(a)] is in fact 'more generous' ... [and] ... more liberal ... than the clear probability test" of section 243(h). *Bolanos-Hernandez*, 749 F.2d at 1321. *See also Stevic*, 104 S.Ct. at 2498. In *Bolanos-Hernandez*, we noted that section 243(h) is phrased in purely objective terms; it prohibits deportation when an alien can show that his "life or freedom *would* be threatened" in the country he has fled. 749 F.2d at 1321 (quoting section 243(h)). Section 208(a), on the other hand, allows the Attorney General to grant asylum on the strength of the "partially subjective" showing of a "well-founded fear of persecuton." *Id.*

■ The phrase "well-founded fear of persecution" has not been precisely defined; the extent of its "generosity" and "liberality" is unclear. *See Bolanos-Hernandez v. INS*, 749 F.2d at 1321 (disposing of the case under only the "clear probability" standard); *Zavalla-Bonilla v. INS*, 730 F.2d 562, 564 n. 1 (9th Cir.1984) (declining to reach the issue of the meaning of "well-founded" fear). It is clear, however, that a proper evaluation of a section 208(a) application must include "consideration of the

---

**3.** We review section 208(a) decisions denying asylum, under a two-part standard. First we determine whether substantial evidence supports the determination that an alien has failed to prove a well-founded fear of persecution. If the alien establishes a well-founded fear, but is nonetheless denied asylum, we review the denial for an abuse of discretion. *See Bolanos-Hernandez*, 749 F.2d at 1321 n. 9.

[alien's] state of mind." *Bolanos-Hernandez*, 749 F.2d at 1321 n. 11.

In this case, the immigration judge properly inquired into the petitioner's "state of mind." The immigration judge, as a result of the inquiry, did not believe the petitioner's testimony that he was reluctant to return to El Salvador because he feared persecution. And, as noted above, the evidence in support of that conclusion was more than substantial.

▇▇▇ A *partially* subjective standard is, of course, also partially objective. Thus, proof of even a sincere and deeply-felt fear is not itself enough to establish an alien's eligibility for political asylum. That fear must be "well-founded." *See Espinoza-Martinez v. INS*, 754 F.2d 1536, 1540 (9th Cir.1985) (requiring "specific" and "objective" evidence). There must always be some direct, credible evidence supporting the claim. In addition, the evidence should be sufficiently specific to indicate that the alien's predicament is appreciably different from the dangers faced by all his countrymen. *See Zepeda-Melendez*, 741 F.2d at 290. We have already rejected the contention that a citizen of El Salvador can establish eligibility for asylum merely by pointing out that political violence is widespread there. *Martinez-Romero v. INS*, 692 F.2d 595, 595–96 (9th Cir.1982).

▇▇▇ In this case, the petitioner's own testimony supporting his application for asylum was found to be not credible. But even if the immigration judge had believed all of the petitioner's testimony, he still would have found "no basis upon which to grant his application."

Here the petitioner failed not only to establish "fear," but also to establish that any such fear would have been "well founded." The petitioner testified that he was afraid that the Salvadoran government would persecute him because of his brief association with the F.R.S. and because his brother had killed two men who worked for the government. He did not, however, testify that other family members had been arrested or harmed. Indeed, he testified

that he had never been persecuted by the government and he apparently had no difficulty in obtaining a Salvadoran passport. The petitioner did not testify that any other members of the F.R.S. had been harmed by the government, nor do any of the supporting affidavits contain allegations to that effect.

The petitioner also said that he was afraid of the F.R.S. But he testified that he had *not* been directly threatened by the F.R.S. He did not testify that the F.R.S. had ever harmed anyone. None of his supporting evidence directly supports the contention that the F.R.S. is inclined or able to persecute those who disagree with their objectives or strategies.

In short, the evidence offered by the petitioner to support his request for asylum was insufficiently direct and specific to establish a well-founded fear of persecution. The application for relief under section 208(a) was properly denied.

### C. *The Petitioner's Other Arguments*

▇▇▇ At the hearing on his request for asylum, the immigration judge denied the petitioner's request that the hearing be continued to give him time to submit his affidavits and articles to the State Department's Bureau of Human Rights and Humanitarian Affairs. The State Department apparently recommended that the petitioner's request for asylum be denied without having seen the affidavits and articles. The petitioner now argues that the refusal to grant the continuance deprived him of due process of law. We disagree.

The petitioner first expressed his intention to seek asylum at his initial deportation hearing in April 1981. The State Department did not make its recommendation until more than a year later. The petitioner had more than enough time to submit whatever material he desired.

Moreover, the applicable regulation does not require the immigration judge to request more than one opinion from the State Department "unless circumstances have changed so substantially since the first opinion was provided that a second referral

would materially aid in adjudicating the asylum request." 8 C.F.R. § 208.10(b) (1985). In this case, no such change of circumstances has occurred. The immigration judge specifically found that the petitioner's additional evidence did "not provide any substantive information that the State Department could make any kind of a determination with respect to." We believe that his conclusion was correct. After considering the evidence, the immigration judge concluded that it did not establish the petitioner's eligibility for relief under section 243(h) or section 208(a). The Board of Immigration Appeals agreed. So do we. The petitioner suffered no prejudice when his request for a continuance was denied.

■ Last, and least, the petitioner argues that his due process rights were violated because the immigration judge did not believe his testimony and gave little weight to the affidavits from El Salvador. We find this argument to be wholly without merit. Neither the constitution nor our decisions interpreting the federal immigration statutes requires that an immigration judge believe an alien's testimony that specific threats have been made against his life. Nor is an immigration judge required to believe the alien when his testimony is merely "unrefuted" and is "corroborated" by documentary evidence of general political violence in his country. An immigration judge alone is in a position to observe an alien's tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is, by virtue of his acquired skill, uniquely qualified to decide whether an alien's testimony has about it the ring of truth. The courts of appeals should be far less confident of their ability to make such important, but often subtle, determinations.

In this case there is substantial evidence in the record to support the conclusion that the petitioner's testimony is simply not believable. Under these circumstances, we

\* Oral argument dispensed with by order of the

clearly should not attempt to second guess the immigration judge.

The petition is DENIED.