**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EVANGELINA CRUZ-LOPEZ,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 97-2170

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-965-009)

Submitted: February 10, 1998

Decided: April 20, 1998

Before ERVIN and WILKINS, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Donald L. Schlemmer, Washington, D.C., for Petitioner. Frank W.
Hunger, Assistant Attorney General, Charles E. Pazar, Senior Litiga-
tion Counsel, Linda S. Wernery, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Evangelina Cruz-Lopez petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to her native country "because of perse- cution or a well-founded fear of persecution on account of race, reli- gion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testi- mony' demonstrating a genuine fear of persecution." Berroteran- Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a rea- sonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

Eligibility for asylum can also be based on grounds of past perse- cution alone even though there is "`no reasonable likelihood of pres- ent persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. Id. ; see Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

2

We must uphold the Board's determination that Cruz-Lopez is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994). We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Cruz-Lopez] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Cruz-Lopez, who entered the United States without inspection on or about November 21, 1990, disagrees with the Board's finding that she failed to qualify for asylum and withholding of deportation. When, as here, the Board chooses to rely on the express reasoning of the IJ in a short per curiam opinion, that reasoning is the sole basis for our review and will be reversed if inadequate. See Gandarillas-Zambrana v. Board of Immigration Appeals, 44 F.3d 1251, 1255 (4th Cir. 1995). We conclude that substantial evidence supports the IJ's finding that Cruz-Lopez did not satisfy her statutory burden.

Evidence established that Cruz-Lopez, a native and citizen of Honduras, was a student at the National Autonomous University of Honduras in Tegucigalpa for two years before she left Honduras. Cruz-Lopez testified that while a student, she participated in a student group called the Revolutionary United Front (FUR), which assisted poor farmers by providing them food, clothing, and drinking water. In addition, FUR members advised farmers on methods of acquiring land that was not being cultivated by its owner. In response to the farmers' efforts to utilize land under the agrarian reform law, landowners, who themselves were often members of the military, would enlist the aid of the military in forcibly removing the farmers.

Cruz-Lopez further testified that in early November 1990, two individuals in civilian clothing interrupted a FUR meeting and ordered the members to stop the meeting. Because of the way they expressed themselves, Cruz-Lopez believed the individuals to be members of the military's investigative branch known as the "DNI." The group ended the meeting, and on her way home, Cruz-Lopez was approached by four others she believed to be DNI members. Those

3

individuals assumed she was a FUR leader and warned her that they would make her "disappear" if she did not stop assisting the farmers.

Cruz-Lopez testified that she was later detained for six hours and interrogated for two hours. After being beaten and briefly losing consciousness, Cruz-Lopez was released, she believed, because some classmates had observed her being taken away to detention. She did not report the detention to the authorities or see a doctor for her injuries. According to Cruz-Lopez, a president of her group was killed one month earlier and another schoolmate had disappeared.

The next evening, Cruz-Lopez testified that she observed at least four military people approaching her house. She fled to a neighbor's house. With a loan from the neighbors, she allegedly took a taxi to the border of El Salvador and crossed the border. She stayed briefly with some acquaintances of an aunt. She then went on to Guatemala and Mexico and finally the United States.

Although Cruz-Lopez testified that she first applied for asylum in California in 1992, the administrative record contained only asylum applications from 1994 and 1995. She submitted no documentary evidence supporting her testimony that she was a member of FUR.

After exhaustively recounting the evidence presented at the hearing, the IJ found Cruz-Lopez's account of events lacking in credibility and therefore found her ineligible for asylum and withholding of deportation. Cruz-Lopez maintains that the IJ was biased against her because she filed a late asylum application and because she fled without money or luggage. She contends that the IJ should have recused himself because of his evident prejudice against aliens in that specific situation.

We find this contention to be utterly without merit. In order to establish disqualification of the IJ based upon bias, Cruz-Lopez must show that the IJ "had a personal, rather than judicial, bias stemming from an `extrajudicial' source which resulted in an opinion on the merits on some basis other than what the [IJ] learned from his participation in the case." See Matter of Exame, 18 I. & N. Dec. 303, 306 (BIA 1982).

4

As the government points out, the IJ merely stated that Cruz-Lopez's delayed asylum application injured her credibility, reasoning that anyone who feared such serious persecution would not have waited almost four years to apply for asylum. Further, the IJ found Cruz-Lopez's account of how she suddenly left Honduras without money or luggage implausible. In so finding, the IJ noted the lack of corroborative evidence to support her account and specifically found, after observing her demeanor, that her testimony was not credible in certain critical aspects. Such reasoning constitutes an appropriate analysis of the evidence and is amply supported by the record. We accord an IJ's credibility findings substantial deference because the IJ is, "by virtue of his acquired skill, uniquely qualified to decide whether an alien's testimony has about it the ring of truth." Sarvia-Quintanilla v. INS, 767 F.2d 1387, 1395 (9th Cir. 1985). Contrary to Cruz-Lopez's allegations, there is absolutely no evidence in the record that the IJ was biased against her.

Cruz-Lopez next contends that the IJ violated her right to due process because he failed to consider all the evidence in the record and erred in finding that she was not persecuted in Honduras. These contentions are belied by the record, which clearly demonstrates that the IJ thoroughly considered all of the evidence and found Cruz-Lopez's account of her experience lacking in credibility. Cruz-Lopez further maintains that she demonstrated refugee status and that the IJ abused his discretion in failing to grant her asylum. This argument is meritless as well, since the IJ found Cruz-Lopez ineligible for asylum based on her implausible testimony and thus never reached the issue of whether she merited asylum as a matter of discretion. See M.A., 899 F.2d at 307.*

Finally, Cruz-Lopez insists she qualified for withholding of deportation. The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. Because substantial evidence supports the IJ's finding that Cruz-

_____

*Cruz-Lopez also contends that international law supports her case for asylum. Because the IJ's negative credibility finding is supported by substantial evidence in the record, we do not address this issue.

5

Lopez is ineligible for asylum, she cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6