

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2005

# Drishti v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1133

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Drishti v. Atty Gen USA" (2005). *2005 Decisions*. Paper 1216.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1216

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 04-1133
_____

AGIM DRISHTI,
*Petitioner*

v.

ALBERTO GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA

_____

On Petition for Review of Order of the
Board of Immigration Appeals
(Board No.  A79-305-487)
_____

Submitted Under Third Circuit LAR 34.1(a)
April 18, 2005
Before: ROTH, FUENTES and BECKER, *Circuit Judges*

(Filed:  May 11, 2005)

_____

OPINION OF THE COURT
_____

BECKER, *Circuit Judge.*

Agim Drishti, a native and citizen of Albania, petitions for review of the decision

of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration

Judge ("IJ").  We will deny the petition.

## I.  Facts and Procedural History

Like many Albanians, Agim Drishti and his family were severely persecuted during the Communist era.   He claims that his father was executed in 1953 for his opposition to the Communist government and his brother fled in 1963 to the United States (and is now a U.S. citizen).  Because such emigration was considered an act of treason, Drishti testified that he and his mother were summoned to the secret police, threatened, interrogated, and detained for one week following his brother's departure.  (JA 238).  Drishti alleged several other instances of detention and beatings during the Communist period.

After 1991 and the fall of the Communist regime, Drishti joined the Democratic Party (DP) and the Association of Persecuted Families, in which he claims to have served in a leadership role.  JA 154-55.  Thus, after 1992, when the Democratic Party was in power, Drishti and his family prospered.

Drishti claims that in 2000, after the DP was replaced by the Socialist Party, he and his son Elez were attending a DP meeting at which Elez gave a speech.  Drishti says that two days later, four masked individuals, who he claims were Socialist party members or police officers, came to his house and arrested him and another son, Ismet, searched his house, and appeared to look for materials relating to his involvement with the DP.  During this detention, the guards beat Drishti and threatened him with worse if he should

2

continue his involvement with the party. Upon his release, Drishti says that he found his store had been destroyed by an apparent explosion. Although he did not know who destroyed the store, he had several reasons to suspect socialist sympathizers. Drishti claims following this incident he feared for his life, and fled Albania in September, 2000.

Agim Drishti came to the United States with a tourist visa. Agim's son Elez and Elez's wife, Nevila, later joined him in the United States by entering through the Canadian border. Elez and Nevila have a son who born in the United States on October 18, 2001. Agim has two other children, a son and a daughter, who remain in Albania. The cases for Agim, Elez, and Nevila were consolidated at the IJ level and all three testified before the IJ. Agim, however, separately appealed.

The IJ denied Drishti's claim on the basis of an adverse credibility finding. In particular, the IJ did not find past persecution because she disbelieved the story about the 2000 attack. The IJ found that Agim's testimony "differed materially from his asylum application," and that he was "evasive" in answering questions. App. 65. As to the other petitioners, the IJ found that Elez seemed to "testify in an exaggerated manner and seemed to be making up facts as he went along," that he "deflected direct questions," and offered inconsistent testimony in several material respects. In addition, the IJ found that Nevila's testimony contradicted Elez's and Agim's testimony as to the dates of certain key instances (such as the 2000 arrests) as well as with respect to details of the arrest incident (such as whether the police wore masks and the number of people who came to

3

the home).  Finally, the IJ noted that there was a lack of corroboration of the testimony.  App. 65-66.

The IJ, therefore concluded that "While this Court is willing to accept that the respondents are members of the Democratic Party and probably had run-ins with members of the Socialist Party, the heart of their testimonies was not believable."  App. 66.  Instead, the IJ found that the testimony regarding the identity of the attackers was "sketchy" and there was not sufficient evidence that the assailants were members of the Socialist Party.  The IJ noted that the State Department Report stated that there were no reports of political prisoners, killings, or disappearances and that members of the Democratic Party continue to hold seats in the Albanian parliament.  Therefore, in addition to disbelieving the testimony regarding past persecution, the IJ found that the respondents had failed to establish they had a well-founded fear of persecution.  App. 66.

The BIA issued a one-paragraph opinion affirming the IJ's denial of relief as to Agim Drishti.  The BIA's opinion made only one correction to the IJ's findings, which was that the IJ found that one of the date discrepancies was erroneous, but otherwise simply agreed with the IJ's credibility determination.  Because of the summary nature of the BIA's decision, and the fact that the opinion essentially deferred to the IJ's analysis, we have the authority to review both the IJ's and the BIA's decision.  *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004).

Our review is limited by the "substantial evidence" standard, under which "the

administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The determination that an asylum applicant faced past persecution, or has a well-founded fear of future persecution, is a factual conclusion subject to this deferential review. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). We therefore must uphold the IJ's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

## II.  Discussion

In our view, the adverse credibility determination is supported by inconsistencies in the record as well as by the IJ's finding that there was insufficient corroboration of the testimony. While it is true that many of the inconsistencies identified by the IJ concern details such as dates and specifics about the events in question, we cannot identify other evidence in the record which would compel us to find credibility. Additionally, the State Department's report on country conditions for 2000 undermines the Drishti's claim that they were attacked and arrested for political reasons, as the report indicates that instances of such conduct were rare at that time.

Moreover, the IJ relied heavily on the demeanor of the all three applicants, a finding to which we owe substantial deference. *See Abdulrahman v. Ashcroft* 330 F.3d 587, 597 (3d Cir. 2003) ("An immigration judge alone is in a position to observe an alien's tone and demeanor, to explore inconsistencies in testimony, and to apply workable

5

and consistent standards in the evaluation of testimonial evidence. He is, by virtue of his acquired skill, uniquely qualified to decide whether an alien's testimony has about it the ring of truth. The courts of appeals should be far less confident of their ability to make such important, but often subtle, determinations.") (quoting *Sarvia-Quintanilla v. INS*, 767 F.2d 1387, 1395 (9th Cir.1985)). In short, there is no basis for setting aside the IJ's conclusion that Drishti had not established a claim for past persecution based on the 2000 arrest incident.

Finally, considering the evidence of relatively stable country conditions, and the fact that the Drishti's relatives have lived in Albania with apparent security, we are satisfied that the IJ had substantial evidence for her conclusion that Drishti lacks a well-founded fear of persecution.

The petition for review will be denied.