

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-2-2006

# Sunarsih v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2355

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Sunarsih v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1487.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1487

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-2355
_____

ENDANG SUNARSIH

v.

ATTORNEY GENERAL OF THE UNITED STATES

Appeals from the Board of Immigration Appeals
(Agency No. A95-476-547)


_____


Submitted Under Third Circuit LAR 34.1(a)
January 25, 2006

Before: RENDELL and STAPLETON, <u>Circuit Judges</u>
and GILES*, <u>District Judge</u>

(Filed:   March 2, 2006)


_____

OPINION OF THE COURT

_____


* Honorable James T. Giles, District Court Judge for the Eastern District of Pennsylvania,
sitting by designation.


-1-

GILES, District Judge.

Petitioner, Endang Sunarsih, is a native and citizen of Indonesia. On August 13, 2002, Sunarsih was placed in removal proceedings after overstaying her non–immigrant B-2 visa. During the proceedings, Sunarsih applied for asylum, withholding of removal, and relief under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT") claiming persecution on the basis of political opinion. On January 13, 2004, an Immigration Judge ("IJ") denied her application. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision without opinion ("AWO"). A timely petition for review followed. For the reasons set forth below, we affirm the decision of the BIA and deny the petition for review.

I. Background

Petitioner claims that she experienced past persecution and has a well-founded fear of future persecution because of her political sympathy with and family connection to the National Awakening Party (Partai Kebangkitan Bangsa or "PKB").[1] In her application for asylum, petitioner described herself as a supporter of PKB who planned to vote for PKB in the June 1999 elections. However, according to the application, beginning in

_____

[1] There is some record confusion as to whether the petitioner supported the PKB (Partai Kebangkitan Bangsa) party or the PKP (Partai Keadilan) party. Petitioner's application states that she is a supporter of "PKB (Partai Kebangkitan Bangsa)." Therefore, the court will assume it is the PKB, not the PKP party with which the applicant sympathizes.

-2-

April of 1999 members of the Golkar party, the party in power at the time, began bribing her and her family members to support that party at the June elections. Though it was not in her application, petitioner also testified that her cousin is a local leader of the PKB party.

Petitioner testified that she feared rejecting their bribes because Golkar party members might burn her house down or throw stones at it. Therefore, she felt compelled to support publicly the Golkar party by participating in public demonstrations and carrying Golkar banners and flags. When the elections neared, petitioner claims that she was again given money by members of the Golkar party to vote for it. In response to application questions regarding fear of harm if returned to Indonesia, petitioner claimed that she had heard on the news that there was a power fight between political parties in Indonesia and, although she could not predict what would happen, she feared something horrible.

Petitioner also claimed that during the June elections a member of the Golkar party threatened her with rape if she did not vote for the Golkar party. Petitioner testified that she reasonably feared that this man would carry out his threat because a former classmate was raped by six men when she attempted to vote against the Golkar party and that she, petitioner, had heard of other incidents from newspaper and television reports.

The IJ rendered an oral opinion at the end of the hearing denying petitioner's application for asylum, withholding of removal, and relief under the CAT. The IJ entered

a mixed credibility finding against petitioner and found that, credibility issues aside, petitioner had not met her burden of proving either past persecution or a well-founded fear of future persecution on account of her political opinion. The IJ focused on inconsistencies in the petitioner's account of the events surrounding the 1999 elections and the fact that neither the rape threat nor her cousin's connection to the PKB party was mentioned in the application. The IJ reviewed the available Department of State Reports for 2001 and 2002, as well as the petitioner's testimony, and found that there was no evidence that a person such as petitioner would likely be subjected to governmental persecution in the future. Finally, the IJ concluded that petitioner had failed to establish, based on the record, either that there was a "clear probability" that she would face persecution if returned to Indonesia, as required for withholding of removal, or that she is more likely than not to be tortured if removed, as required by the CAT.

On appeal, petitioner raises three issues. First, she submits that the IJ impermissibly based his decision on minor inconsistencies in the applicant's account which are explained by her difficulties with the English language. Second, petitioner claims that the IJ erred in his conclusion that petitioner was not subjected to past persecution. Finally, petitioner contends that the BIA's use of an AWO was inappropriate in this case because the IJ erred in his determination that petitioner failed to establish that she was subjected to past persecution.

II.  Administrative and Judicial Standards

We have the power to review only a "final order of removal" under 8 U.S.C. § 1252(a)(1).  Ordinarily, courts of appeal review the decisions of the BIA and not those of an IJ.  Where the BIA does not render its own opinion and either defers to or adopts the opinion of the IJ, "a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate."  Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002); Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001).  Our scope of review is extremely narrow.  Given the strong implications for foreign policy and "[b]ecause Congress has delegated authority over the immigration laws to the Attorney general, who in turn vested that authority in the [BIA], principles of Chevron deference apply in the immigration context."  Abdulrahman v. Ashcroft, 330 F.3d 587, 591 (3d Cir. 2003); Gao, 299 F.3d at 271.

A grant of asylum under § 1158(b)(1) of the Immigration and Nationality Act ("INA") allows an otherwise removable alien to remain in the United States.  The Attorney General may grant asylum if an alien demonstrates that he or she meets the definition of a "refugee" under § 1101(a)(42)(A), that is, a person unable or unwilling to return to his or her county of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  The applicant "bears the burden of establishing that he or she falls within the statutory definition of 'refugee.'"  Abdille v. Ashcroft, 242 F.3d 477,

482 (3d Cir. 2001).  See also 8 C.F.R. §§ 208.13(a).

In order to establish eligibility for asylum on the basis of past persecution, an applicant must show:  "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." Gao, 299 F.3d at 272 (quoting Navas v. INS, 217 F.3d 646, 655 (9th Cir. 2000)).  Such a showing of past persecution raises a presumption of a well-founded fear of future persecution.  Abdulrahman, 330 F.3d at 592; 8 C.F.R. §§ 208.13(b)(1).

If past persecution is not established, an "applicant can demonstrate that she has a well-founded fear of future persecution by showing that she has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country." Gao, 299 F.3d at 272.  Therefore, the "demonstration of a well-founded fear of persecution carries both a subjective and an objective component." Abdille, 242 F.3d at 495-96.

Credibility determinations as well as whether the asylum applicant has demonstrated past persecution or a well-founded fear of future persecution are matters for factual determination which are reviewed under the substantial evidence standard.  Gao, 299 F.3d at 272.  This court has held that "[f]indings of fact by the IJ . . . will be upheld to the extent that they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Abdulrahman, 330 F.3d at 597.  Under this standard,

reversal is only permitted when "any reasonable adjudicator would be compelled to conclude to the contrary." Gao, 299 F.3d at 272 (quoting INA § 242(b)(4)(B), codified at 8 U.S.C. § 1252(b)(4)(B)). See also INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992) (holding that "to obtain judicial reversal of the BIA's determination, [an applicant] must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.").

When reviewing an adverse credibility determination, substantial deference must be afforded to the IJ so long as the decision is grounded in record evidence and the IJ provides specific and cogent reasons for the decision. Abdulrahman, 330 F.3d at 597. While, in general, "minor inconsistencies and minor admissions that 'reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding,'" Gao, 299 F.3d at 272 (quoting Vilorio-Lopez v. INS, 852 F.2d 1137, 1142 (9th Cir. 1988)), if the discrepancies go to the "heart of the asylum claim," substantial deference must be given. Id. Such deference is appropriate given that the "immigration judge alone is in a position to observe an alien's tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluations of testimonial evidence." Abdulrahman, 330 F.3d at 597 (quoting Sarvia-Quintanilla v. INS, 767 F.2d 1287, 1395 (9th Cir. 1985)). Therefore, an IJ is "by virtue of his acquired skill, uniquely qualified to decide whether an alien's testimony has about it the ring of truth." Id.

### III. Adverse Credibility Determination

Petitioner contends that the IJ's adverse credibility determination is not supported by substantial evidence because the inconsistencies upon which the IJ based his decision were minor, being merely the result of petitioner's difficulty with the English language and the substantial passage of time since the events in question. We disagree. The IJ fully and cogently explained his reasons for issuing a mixed credibility ruling. First, the IJ based his decision on the fact that "[t]he key aspects of the [petitioner]'s testimony and the core bases of her fears don't show up on the application for asylum, most importantly, the [petitioner]'s claim that she was threatened with rape if she did not vote for the Golkar party." The IJ observed that "[g]iven the nature and severity of the such a threat, one would think that that would have made it to the application for asylum or any amendment or supplement." While the IJ acknowledged that it is reasonable that someone might be embarrassed to discuss the details of a specific sexual assault, he observed that "there was no assault, only the threat of same, and the Court would have expected that reasonably to appear somewhere in the record of proceedings prior to hearing about it during the examination of the witness." When questioned about not discussing the threat of rape in her application, petitioner's answer was merely that she told "Kiki," a non-attorney who assisted her with the application. However, the IJ found it inexplicable that when petitioner obtained counsel, this claimed history was not put forth in a supplemental affidavit given its central importance to petitioner's claim of past persecution. Similarly,

petitioner's claims that her cousin was a local leader of the PKB party was not in the original application or any supplemental affidavit, and was disclosed only during the hearing. Petitioner's claims of being threatened with rape, were she not to vote for the Golkar Party, and her familial connection to the PKB party go to the heart of her request for political asylum. Therefore, one could reasonably conclude that, if true, they would have been at the forefront of an application, and at the least, been made part of the record through a supplemental affidavit. The IJ's decision to discredit petitioner under these circumstances was reasonable.

Second, the IJ expressed concern with the plausibility of the claim that the petitioner received a bribe for her vote one year before the 1999 elections and that the petitioner was threatened with violence were she not to vote for the Golkar party. Petitioner testified that she was threatened in 1998 should she not vote for the Golkar party and then was watched for the next year.[2] In petitioner's affidavit, however, she

---

[2] In his decision, the IJ remarked that the petitioner testified that the person who threatened her with rape were she not to vote for the Golkar party "came around to check on her." According to the IJ, when asked why this information was not included in her application petitioner remarked that she had disclosed it to "Kiki." The IJ discredited this portion of petitioner's account reasoning that if petitioner were followed by the man who threatened her this information would have been a key element in her petition from asylum and should have been disclosed in her original application or in a supplemental affidavit. In her briefing, petitioner claims that she never testified that the man who threatened her watched her. Petitioner asserts that the issue was raised at the hearing and due to poor translation from the interpreter and her general anxiety she responded that she told Kiki about the events at issue. Either way, the IJ decision to use this discrepancy in his decision to render a mixed credibility finding was not unreasonable. The IJ was in the best position to assess the petitioner's demeanor during the hearing and her responses to questions on cross. Furthermore, if petitioner was not watched after she was initially threatened, this only bolsters the conclusion that petitioner lacked a basis for establishing past persecution or the threat of future threats.

stated that she was first offered money for her vote in April 1999. From the affidavit, it was unclear to the IJ whether petitioner accepted the bribe at that time. The application continued that petitioner was approached again outside the voting location in June 1999 and at that time she accepted the bribe. Petitioner argues that the discrepancies between her testimony at the hearing and her application are attributable to her difficulty in understanding the questions at the hearing and the elapse of time since the elections. It is not clear from the record when petitioner was first bribed and for how long prior to the June 1999 elections. Nor is it clear from the record when petitioner was first bribed and for low long prior to the June 1999 elections. Given these record inconsistencies, we do not find that the IJ's determination to discredit her testimony to be unreasonable.

IV. Past Persecution & Well-Founded Fear

Petitioner also argues that the IJ erred in determining that petitioner's accounts of mistreatment in her home country did not amount to either persecution or a well-founded fear of persecution. Petitioner argues that her accounts of voter intimidation, that is, being threatened with violence to her person and her property if she did not vote for the Golkar party, being forced to politically support an opposing party at a public demonstration, and being bribed constitute persecution as matter of law. To establish past persecution, an applicant must establish not only a particularly egregious incident or series of incidents, but must also establish that the alleged persecution was 'on account

-10-

of' a statutorily-protected ground.  Here, petitioner alleges that she was subjected to voter intimidation on account of her sympathy for the PKB party.  By her own admission, petitioner was not a member of the PKB party and has not offered any evidence explaining how she was targeted or identified as such on the basis of political opinion.

The State Department's report for 2001 and other sources lend some support for petitioner's contention that the Golkar party bribed and threatened voters.[3]  However, neither petitioner's account or the report differentiates between a general practice of vote buying and intimidation and a practice specifically directed against members of the PKB party and its supporters.

Petitioner presses that these allegations demonstrate a well-founded fear of future persecution.  There are both subjective and objective elements to establishing a well-founded fear of future persecution.  Petitioner claims that, based on her experience with members of the Golkar party, she fears that were she to return to Indonesia that similar incidents and threats could occur.[4]  Petitioner further suggests, in pleadings filed here and during testimony at the immigration hearing, that she might possibly be identified by members of the Golkar party through her voter identification number were she to vote for

---

[3] The 2001 Report states that "[t]here were numerous, and in some cases credible, allegations of vote buying and scattered allegations of voter intimidation, particularly in rural areas."

[4] Petitioner also discusses the pattern of persecution against ethnic Chinese in Indonesia as a ground for establishing her well-founded fear.  However, petitioner is not ethnically Chinese, but ethnically Indonesian and Moslem.  Therefore, these arguments are unavailing.

an opposing party. After reviewing the record and Country reports, the IJ determined that petitioner's concerns of being identified and subjected to persecution were at best speculative and conjectural. We cannot say that this conclusion is unreasonable. Petitioner has offered nothing to suggest that she would be the target of future threats and intimidation. She is not a member of the PKB, or any other political party in Indonesia. She was not subjected to threats of any kind after the June 1999 elections.

Finally, although Indonesia's human rights record as a whole remains questionable, it continues to work toward a free and open democracy with a representative government. The Golkar party, although the controlling party prior to 1999, no longer has the type of strong-hold previously exhibited over the citizens of Indonesia, according to the 2001 Country report.

## V. The BIA's Use of the Streamlining Regulations

Finally, petitioner argues that the BIA failed to follow its own regulations when it issued an AWO. Pursuant to 8 C.F.R. § 1003.1(e) all immigration cases are initially assigned to a single BIA member for disposition. The BIA member is then required to affirm the decision without opinion, if the member determines (1) that result was correct; (2) any errors were either harmless or nonmaterial; and (3) the issues are squarely controlled by precedent and that the issues are not so substantial as to warrant a full written opinion. 8 C.F.R. § 1003.1(e)(4). This court has previously affirmed these

-12-

streamlining procedures and nothing in this case convinces us that the BIA member's analysis was arbitrary or capricious. See Dia v. Ashcroft, 353 F.3d 228, 236, 238 (3d Cir. 2003) (finding that the streamlining procedures do not violate the INA or the Due Process Clause). The issues are neither so substantial or outside the controlling precedent so as to warrant a full written opinion.

## VI. Withholding Removal and Convention Against Torture

Petitioner also alleged that she was entitled to relief under the principles of withholding of removal and the CAT. However, the standards for withholding of removal and CAT are significantly more stringent than those for asylum. To qualify for withholding of removal, an applicant must show that, if deported, there is a "clear probability" that she will be persecuted on account of a specifically protected ground. Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003); 8 C.F.R. § 208.16(b). To qualify for relief under the CAT, an applicant must show that she is "more likely than not" to be tortured if returned to her home country. Abdulraham, 330 F.3d at 592; 8 C.F.R. §§ 208.16(c)(2) & (4). Here, petitioner has failed to demonstrate either of these probabilities and therefore relief is denied.

## VI. Conclusion

For the reasons set forth above, we deny the petition for review.