OPINION
PER CURIAM.
Vetetim Skenderi petitions for review of a decision rendered by the Board of Immigration Appeals on August 15, 2008. For the reasons that follow, we will deny the petition for review.
I. Background
Skenderi is a native and citizen of Albania. He entered the United States in November 2002 and was placed in removal proceedings. In June 2003, Skenderi applied for asylum, withholding of removal, and protection under the Convention Against Torture (“CAT”), based upon his support for Albania’s Democratic Party (“DP”).
After a February 2004 hearing, the Immigration Judge (“IJ”) denied relief. Skenderi appealed the decision to the BIA, which remanded the matter for further consideration of Skenderi’s credibility and the merits of his claim. On remand, the IJ held another hearing and permitted Sken-deri to present additional evidence. In a May 16, 2007, decision, the IJ again denied Skenderi’s claims.
Skenderi appealed. On August 15, 2008, the BIA affirmed the IJ’s decision and dismissed the appeal. Because the decision was mailed to the incorrect address, the BIA re-issued the decision on October 23, 2008. This timely petition for review followed.
II. Analysis
We generally review only final decisions by the BIA. See Li v. Att’y Gen., 400 F.3d 157, 162 (3d Cir.2005); Abdulai v. Ashcroft, 239 F.3d 542, 548-49 (3d Cir.2001). However, because the BIA substantially relied upon the IJ’s adverse credibility determination, we review both the BIA’s and the IJ’s decisions with regard to the credibility determination. See Xie v. Ashcroft, 359 F.3d 239, 241-42 (3d Cir.2004). We review legal conclusions de novo, see Eze-agwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir.2003), and uphold factual determinations if they are supported “by reasonable, substantial and probative evidence on the record considered as a whole.” Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir.2004). Ultimately, this Court “must find that the evidence not only supports that conclusion [that the application should have been granted], but compels it.” INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812,117 L.Ed.2d 38 (1992).
Concluding that the IJ’s findings of fact were not clearly erroneous, the BIA affirmed the adverse credibility determination. We have recognized that an IJ is normally in the best position to make a credibility determination and is “uniquely qualified to decide whether an alien’s testimony has about it the ring of truth.” Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir.2003) (quoting Sarvia-Quintanilla v. INS, 767 F.2d 1387, 1395 (9th Cir.1985)). We review adverse credibility determinations for substantial evidence. Chen v. Ashcroft, 376 F.3d 215, 221-22 (3d Cir. *434 2004). We will affirm the adverse credibility finding if it is supported by “reasonable, substantial, and probative evidence on the record considered as a whole.” Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir.2002). To reverse, the evidence of Skenderi’s credibility must be so strong “that in a civil trial he would be entitled to judgment on the credibility issue as a matter of law.” Chen, 376 F.3d at 222.
We conclude that the adverse credibility determination rests upon substantial evidence. The IJ provided numerous specific and cogent reasons for concluding that Skenderi lacked credibility, many of which go to the “heart” of his claims.[1] See Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir.2004). Specifically, the IJ identified the following inconsistencies within Skenderi’s testimony and/or between Skenderi’s testimony, application, and prior statements [2]:
(1) Skenderi submitted a newspaper article concerning his alleged political persecution. He originally testified that he obtained the article from a friend, but later testified that his family sent it to him. He also originally testified that the article was from a national Albanian newspaper, but later testified that it was from a small local paper that could not afford to register with the Library of Congress.
(2) Skenderi originally testified that when he was arrested on May 5, 2002, he was met by the prosecutor; he later testified that the prosecutor met him the following day.
(3) Skenderi originally stated in his airport interview that he was never arrested, but later testified that he was arrested multiple times for his political activities.
(4) Skenderi and his wife both stated that he left Albania on August 28, 2002. His asylum application stated that he went immediately to the United States without traveling through or staying in any other country. However, Skenderi did not did not arrive in the United States until November 3, 2002.
(5) His airport interview, credible fear interview, and hearing testimony did not consistently describe Skenderi’s history of alleged arrests, including arrests taking place in the months immediately preceding his flight from Albania.
In addition, the IJ identified the following inherent implausibilities within Skenderi’s testimony:
(1) Skenderi obtained a passport reflecting his name, signature, and photograph and was able to leave Albania without incident, despite the alleged presence of his name on a police “blacklist.”
(2) Skenderi claims he was beaten and arrested by the police in May 2002, but also testified that the police took him to the hospital for treatment after the beating and were sufficiently careless that he was able to escape by walking through a back door of the hospital.[3]
*435 (3) Skenderi’s family was allegedly involved so deeply in DP activities that they remained in politics despite the fact that family members were assassinated in the 1990s, but he testified that his family left politics completely when he departed from Albania.
Skenderi argues that the adverse credibility determination was “based upon [the IJ’s] failure to review the transcripts, her refusal to allow the Petitioner to testify completely at his hearings and her refusal to listen to Petitioner’s credible and consistent explanation of alleged inconsistencies.” We cannot agree.
The record demonstrates that the IJ permitted Skenderi to testify at the evidentiary hearings. She also closely reviewed the transcripts of Skenderi’s testimony, as reflected by her decision’s detailed summary of Skenderi’s testimony, complete with transcript references.[4] In our view, the IJ based her conclusions concerning Skenderi’s lack of credibility upon a logical, eommonsense interpretation of the facts that were presented. Cf., Butt v. Gonzales, 429 F.3d 430, 436 (3d Cir.2005).
Skenderi responds with a series of what he proposes are “credible and plausible” explanations for each of the credibility problems that the IJ identified. We find no error in the decision not to credit Sken-deri’s proposed explanations. As the BIA appropriately noted, the Supreme Court has instructed that “[wjhere there are two permissible views of the evidence, the fact-finder’s choice between them cannot be clearly erroneous.” Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Skenderi has not demonstrated that the IJ’s findings of fact were clearly erroneous. His contention that there could be other plausible interpretations of the evidence is not sufficient to undermine the IJ’s adverse credibility determination.[5]
The BIA concluded that the IJ’s adverse credibility finding was dispositive and relied upon it as the basis to deny Skenderi’s *436 appeal. “An alien’s credibility, by itself, may satisfy his burden, or doom his claim.” Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir.2003) (en banc). In this case, the adverse credibility determination dooms Skenderi’s claim. Skenderi bore the burden of supporting his asylum claim through credible testimony. Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir.2001). He failed to meet that burden.
Finally, Skenderi claims that we must remand his case because he appealed the Id’s decision to deny withholding of removal and CAT protection, but the BIA “inexplicably” deemed those claims abandoned. We disagree. Although the notice of appeal initially indicated an intent to pursue those claims, see A.R. 331, in his brief to the BIA, Skenderi did not present any argument in support of withholding of removal or CAT protection. See A.R. 14-41. Because Skenderi only briefed his asylum claim, we find no error in the BIA’s conclusion that he abandoned the other claims. See, e.g., Chen v. Ashcroft, 376 F.3d 215, 221 (3d Cir.2004); Kost v. Ko-zakiewicz, 1 F.3d 176, 182 (3d Cir.1993).
III. Conclusion
We have considered all of Skenderi’s remaining arguments and conclude that none has merit. Accordingly, we will deny the petition for review.

. Because Skenderi filed his asylum application in 2004, the REAL ID Act, effective May 11, 2005, does not apply to his claims. See 8 U.S.C. § 1158(b)(1)(B).

. The IJ expressly noted that the inconsistencies between Skenderi's airport statement and testimony did not provide the sole basis for the adverse credibility determination. Cf., Balasubramanrim v. INS, 143 F.3d 157, 164 (3d Cir.1998) (holding that inconsistencies between hearing testimony and an airport statements are not sufficient, standing alone, to support an adverse credibility determination).

.Skenderi argues that the IJ's finding in this regard is erroneous because the IJ stated that the testimony concerning the escape from the *435 hospital was internally consistent. See A.R. 229 (Hrg. Tr., 03/07/07, at 140 (“All right. That’s consistent enough.”)). However, consistent does not mean credible. An adverse credibility determination may be based on implausibility or inherent improbability. See Berishaj v. Ashcroft, 378 F.3d 314, 324 (3d Cir.2004).

. We note that some of the IJ's transcript references cite to an incorrect page number. Relying upon these apparent typographical errors, Skenderi argues rather disingenuously that the IJ did not review his testimony. For instance, Skenderi argues that although “the IJ stated 'the Respondent originally testified that the article [supporting his claim of persecution] was from a national newspaper published and distributed throughout Albania’ See [transcript] at 45 .... a simple review of page 45 of the transcripts establishes that the Petitioner never made the statement cited by the IJ." See Petitioner’s Brief at 22. However, while Skenderi did not make that statement on page 45, he did make that precise statement a few pages later. A.R. 132 (Hrg. Tr., 2/26/04, at 148) (“This is a national paper published and distributed throughout Albania.”).

. By way of example, with regard to the IJ’s finding of implausibility concerning Sken-deri’s ability to obtain a passport despite being blacklisted, Skenderi contends that "Petitioner did not obtain a valid passport. He testified that his brother obtained the document.” However, Skenderi also testified that he signed the passport documents in his own name, submitted his picture with them, and had no trouble obtaining the passport or leaving the country despite the fact that his name was allegedly on a "blacklist" and that the police knew him by name and appearance. See A.R. 52 (IJ Decision at 9), see also A.R. 221-22 (Hrg. Tr., 03/07/07, at 132-33). Thus, even considering that his brother submitted the application, substantial evidence supports the IJ’s conclusion that Skenderi’s ability to obtain a passport undermined the credibility of his claim.